JOHN A. SHARPE, JR.; HELEN A. SHARPE; CLIFFORD S. SHARPE; BRENDA B. SHARPE; AND HAL C. SHARPE v. PARK NEWSPAPERS OF LUMBERTON, INC.

No. 56A86

(Filed 12 August 1986)

**Declaratory Judgment Act § 3— anti-competitive provisions in promissory notes— no justiciable controversy**

The trial judge properly dismissed for lack of a justiciable controversy a declaratory judgment action in which plaintiffs sought to have declared invalid provisions in notes accepted by plaintiffs for the sale of a newspaper which prohibited competition by plaintiffs. Plaintiffs had not competed against defendant in the covered area and the only intentions expressed by plaintiffs were to explore feasibility or to ascertain opportunities; whether they would actually engage in competitive activity would depend upon many factors other than the provisions in the notes. N.C.G.S. § 1-254 (1983); N.C.G.S. § 1A-1, Rule 12(b)(6).

APPEAL of right by defendant pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 78 N.C. App. 275, 337 S.E. 2d 174 (1985), which reversed a judgment entered by *Ellis, J.*, on 11 December 1984, in Superior Court, ROBESON County. Heard in the Supreme Court 17 April 1986.

The plaintiffs, minority shareholders in a corporation that sold its assets to defendant, filed suit 1 July 1983 alleging unfair restraint of trade and asking for a declaratory judgment to determine the validity of certain provisions in a promissory note executed by the defendant to the corporation which was in turn assigned to the plaintiffs for their share of the unpaid balance of the purchase price of the corporation's assets. Defendant's motions to dismiss and for summary judgment under N.C.G.S. § 1A-1, Rules 12(b)(6) and 56 were denied. At the end of the plaintiffs' evidence in a non-jury trial, Judge Ellis granted defendant's motion to dismiss under N.C.G.S. § 1A-1, Rule 41(b) on the ground that there existed no justiciable controversy between the parties.[1] The plaintiffs appealed to the Court of Appeals, which

---

1. This dismissal is, of course, not an adjudication upon the merits. N.C.G.S. § 1A-1, Rule 41(b) (1983) provides, *inter alia:* "Unless the court in its order for dismissal otherwise specifies, a dismissal under this section and any dismissal not provided for in this rule, *other than a dismissal for lack of jurisdiction* . . . operates as an adjudication upon the merits." (Emphasis added.)

reversed the trial court, one judge dissenting. The defendant appealed to this Court.

*McCoy, Weaver, Wiggins, Cleveland & Raper, by Donald W. McCoy; and Lee & Lee, by W. Osborne Lee, Jr., for plaintiff-appellees.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Samuel G. Thompson, Michael E. Weddington, and William H. Moss, for defendant-appellant.*

BILLINGS, Justice.

In 1982, the defendant purchased the assets of The Robesonian, Inc., whose business was the publication of a daily and Sunday newspaper in Lumberton, North Carolina called The Robesonian. The plaintiffs, minority stockholders in The Robesonian, Inc., voted against the sale of the assets.

In partial payment of the $11,751,000.00 purchase price for the assets of the corporation, the defendant gave promissory notes to the corporation, which were distributed to the shareholders in amounts proportional to their ownership interests. The plaintiffs object to the following provisions in their note, which, except for different amounts payable, were in all of the promissory notes, and request a judicial declaration that they are invalid and unenforceable:

A. If the Holder does not compete against Park as hereinafter defined, the principal amount shall bear interest at the rate of ten percent (10%) per annum and shall be payable:

$78,724.96 on April 1, 1983, together with accrued interest; thereafter in equal quarterly payments of principal and interest of $30,077.99 each during the following nine year period on the first day of July, October, January and April of each year; or

B. If the Holder does compete with Park, as hereinafter defined, then the unpaid principal amount of this Note shall thereafter not bear interest and shall be payable in a lump sum on March 23, 1992.

For the purposes of determining the payments due under this Note, as provided above, the Holder shall be deemed and held to be competing against Park if he or she shall, without prior written consent and approval of Park, to any extent directly or indirectly own, operate, finance, establish, control, support, or be employed by a newspaper or other printed advertising medium in Robeson County, North Carolina or in any county contiguous to Robeson County, North Carolina, or if he or she shall permit any third party to use his or her name to finance, directly or indirectly, any activities which would result in competition with Park or with any corporation affiliated with Park which publishes a newspaper or other printed advertising medium in any of the aforesaid counties.

In his judgment dismissing the plaintiffs' action, the trial judge made, *inter alia*, the following findings of fact:

4. That the discovery in this case includes Interrogatories to plaintiffs and plaintiffs' Answers thereto as follows:

Question 3. As of on or about July 1, 1983 and continuing to the present what plans, if any, do you have to directly or indirectly own and operate, finance, establish, control, support or be employed by any newspaper or other printed advertising medium in Robeson County, North Carolina, or in any county contiguous to Robeson County, North Carolina?

ANSWER: John A. Sharpe, Jr. and Helen A. Sharpe — Contingent upon court decision granting the relief sought by plaintiffs in this action, INTEND TO EXPLORE FEASIBILITY of directly or indirectly owning and/or operating and/or financing and/or establishing and/or controlling and/or supporting and/or becoming employed by a newspaper or other printed advertising medium in Robeson County or any county adjacent thereto. [Emphasis added by trial court.]

. . . .

7. That plaintiffs have presented no evidence of specific plans to directly or indirectly own, operate, finance, establish,

control, support or become employed by a newspaper or other printed advertising medium in Robeson County or in any other county adjacent thereto.

8. That due to plaintiffs' lack of evidence of any specific plans to compete with defendant, as defined in the Promissory Note, and due to the lack of evidence of plaintiffs' having requested written consent and approval of defendant to so compete,[2] that this matter has not ripened into an actual controversy.

. . . .

11. That no actual controversy exists between the parties to this action.

12. That it does not appear that litigation between these parties is unavoidable.

The plaintiffs have not assigned as error any of the trial judge's findings of fact. N.C.G.S. § 1A-1, Rule 52(c) (1983) provides:

When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may be raised on appeal whether or not the party raising the question has made in the trial court an objection to such findings or has made a motion to amend them or a motion for judgment, or a request for specific findings.

This Court has held that Rule 52(c) allows a party to seek appellate review on the question of whether the evidence supported the findings of fact without excepting at trial to the judge's findings, but that in the record on appeal it is "incumbent upon appellant to assign error so as to outline his objections on appeal." *Whitaker v. Earnhardt*, 289 N.C. 260, 264, 221 S.E. 2d 316, 319

---

2. In their briefs and arguments before this Court, the parties attach significance to the question of whether the plaintiffs had been denied written consent to compete with the defendant. Because the plaintiffs contend that they should have an absolute right to compete without asking for permission from the defendant, we find that, except as it relates to the question of whether the plaintiffs have shown that at the time of the institution of the action they had formed an intention to compete, the absence of a request for and denial of the right to compete is irrelevant to the question of justiciability.

(1976). Because the plaintiffs have not assigned error to the judge's findings, those findings are conclusive on appeal, *Askew v. Tire Co.*, 264 N.C. 168, 141 S.E. 2d 280 (1965), and we are only required to determine whether the findings support the trial judge's conclusions and the entry of judgment. *Whitaker v. Earn-hardt*, 289 N.C. 260, 221 S.E. 2d 316. Nevertheless, because the question presented involves the jurisdiction of the courts to entertain the plaintiffs' action, we have elected to review the entire record to determine whether the trial judge's findings of fact were supported by competent evidence and in turn supported his conclusion that "no justiciable controversy exists between the parties" and that the "plaintiffs are not entitled to relief under the Declaratory Judgment Act."[3]

The plaintiffs' action is for a declaratory judgment as authorized by Article 26 of Chapter 1 of the General Statutes of North Carolina. N.C.G.S. § 1-254 (1983) provides as follows:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the . . . contract ; . . and obtain a declaration of rights, status, or other legal relations thereunder. A contract may be construed either before or after there has been a breach thereof.

Although the North Carolina Declaratory Judgment Act does not state specifically that an actual controversy between the parties is a jurisdictional prerequisite to an action thereunder, our case law does impose such a requirement. *Gaston Bd. of Realtors v. Harrison*, 311 N.C. 230, 234, 316 S.E. 2d 59, 61 (1984). An often-quoted and colorful explanation by Justice Ervin of the limitations upon jurisdiction under the Declaratory Judgment Act is contained in *Lide v. Mears*, 231 N.C. 111, 117, 56 S.E. 2d 404, 409 (1949):

---

3. We note that in the Record on Appeal the parties have stipulated that "the trial court had jurisdiction over the [defendant] and the subject matter of this action" and yet that the defendant is contesting the subject matter jurisdiction of the courts on the basis that an actual or justiciable controversy did not exist. Because parties cannot stipulate to give a court subject matter jurisdiction when it does not exist, *City of Raleigh v. R.R. Co.*, 275 N.C. 454, 168 S.E. 2d 389 (1969), we are not bound by the stipulation.

There is much misunderstanding as to the object and scope of this legislation. Despite some notions to the contrary, it does not undertake to convert judicial tribunals into counsellors and impose upon them the duty of giving advisory opinions to any parties who may come into court and ask for either academic enlightenment or practical guidance concerning their legal affairs. [Citations omitted.] This observation may be stated in the vernacular in this wise: The Uniform Declaratory Judgment Act does not license litigants to fish in judicial ponds for legal advice.

While the requirement for an actual controversy is clearly a prerequisite for jurisdiction under the Declaratory Judgment Act, the determination of whether a justiciable controversy exists is not always an easy question.

We begin our analysis by examining the statement by the Court of Appeals that "[t]here is no absolute requirement that the controversy exist at the time the pleadings are filed." 78 N.C. App. at 280, 337 S.E. 2d at 177. In reaching its conclusion, the Court of Appeals relied upon *Golden v. Zwickler*, 394 U.S. 103, 22 L.Ed. 2d 113 (1969), noting, however, that the rule therein applied[4] "is usually applied to render moot controversies which have been resolved between the filing of the complaint and time of hearing." 78 N.C. App. at 280, 337 S.E. 2d at 177. We disagree with the Court of Appeals and hold that in order for a court to have subject matter jurisdiction to render a declaratory judgment, an actual controversy must exist between the parties at the time the pleading requesting declaratory relief is filed.

We first note that while we may look for guidance to federal court decisions regarding the existence or absence of a justiciable controversy, jurisdiction within the state courts of North Carolina is not controlled by those federal decisions but is determined by our own statutes and court decisions. *See In re Peoples*, 296 N.C. 109, 250 S.E. 2d 890 (1978), *cert. denied*, 442 U.S. 929, 61 L.Ed. 2d 297 (1979); *McCune v. Manufacturing Co.*, 217 N.C. 351, 8 S.E. 2d 219 (1940).

---

4. "The proper inquiry was whether a 'controversy' requisite to relief under the Declaratory Judgment Act existed at the time of the hearing on the remand." 394 U.S. at 108, 22 L.Ed. 2d at 117.

We further note that in *Golden*, the plaintiff had sought a declaration that a state statute penalizing the distribution of anonymous literature in connection with an election campaign was unconstitutional. The plaintiff had already been prosecuted once for violating the statute and alleged that he would again distribute anonymous handbills criticizing a named Congressman in his bid for reelection in 1966. While the action was pending, the Congressman became a state Supreme Court Justice, mooting any opportunity for the plaintiff to violate the statute in the way in which he had alleged an intention to violate it. Without addressing the question of whether the controversy had been "ripe" for adjudication at the time the complaint was filed, the United States Supreme Court found that by the time of the hearing no controversy existed; i.e., the "immediacy and reality" necessary to jurisdiction which might have existed at the time of filing of the complaint had disappeared by the time of the hearing and the matter had become moot. "It was not enough to say, as did the District Court, that nevertheless Zwickler has a 'further and far broader right to a general adjudication of unconstitutionality . . . [in] [h]is own interest as well as that of others who would with like anonymity practise [sic] free speech in a political environment . . . .'" 394 U.S. at 109-10, 22 L.Ed. 2d at 118.

This Court has required that an actual controversy exist both at the time of the filing of the pleading and at the time of hearing. *Gaston Bd. of Realtors v. Harrison*, 311 N.C. at 234-35, 316 S.E. 2d at 62 ("When the record shows that there is no basis for declaratory relief, *or* the complaint does not allege an actual, genuine existing controversy, a motion for dismissal under G.S. 1A-1, Rule 12(b)(6) will be granted"). (Emphasis added.) In stating that "we see no reason why the rule should not operate to allow consideration of any genuine controversy existing at any time after the pleadings are filed up to the time the motion to dismiss is ruled upon," 78 N.C. App. at 280, 337 S.E. 2d at 177, the Court of Appeals overlooks the fact that the existence of an actual controversy is necessary to the court's subject matter jurisdiction, *State ex rel. Edmisten v. Tucker*, 312 N.C. 326, 323 S.E. 2d 294 (1984); *Adams v. Dept. of N.E.R.*, 295 N.C. 683, 249 S.E. 2d 402 (1978), and the basic rule that "the jurisdiction of a court depends upon the state of affairs existing at the time it is invoked." *In re Peoples*, 296 N.C. 109, 144, 250 S.E. 2d 890, 910. As Chief Justice

Sharp noted in *In re Peoples*, 296 N.C. at 148, 250 S.E. 2d at 912: "Unlike the question of *jurisdiction*, the issue of *mootness* is not determined solely by examining facts in existence at the commencement of the action." (Emphasis added.)

We must next determine whether Judge Ellis correctly concluded that at the time of institution of this action no justiciable controversy existed between the parties.[5]

The original complaint filed on 1 July 1983 alleged that the plaintiffs were "entitled to engage in the lawful activities of publishing a newspaper or other printed advertising media" in the area covered by the contested provisions of the promissory note, but the plaintiffs did not allege that they intended to engage in any activity covered by those provisions. Following a hearing before Judge Giles Clark on the defendant's motion pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6) to dismiss the complaint, the plaintiffs amended their complaint by adding the following allegations:

> 16. "The plaintiffs maintained their residence in Robeson County, North Carolina, and do not intend to move their residence; plaintiffs do intend, subject to circumstances of their health, financial ability, availability of personnel, business feasibility, and public demand, to engage in the activities of publishing a newspaper or other printed advertising media, or to seek employment with a newspaper or other printed advertising media in Robeson County, North Carolina, or in a county contiguous to Robeson County, North Carolina."

The only evidence before the court regarding the intention of the plaintiffs to compete with the defendant in the subject area consisted of answers by plaintiffs to interrogatories as follows:

> 3. As of on or about July 1, 1983, and continuing to the present, what plans, if any, do you have to directly or indirectly

---

5. We note that Judge Ellis's actual conclusion is that "no justiciable controversy *exists* between the parties" (emphasis added), suggesting that he was not limiting his consideration to the time when the complaint was filed. However, we also note that under the facts of the case, if no actual controversy existed at the time of the hearing, necessarily no controversy existed at the time of the filing of the complaint.

own, operate, finance, establish, control, support, or be employed by any newspaper or other printed advertising medium in Robeson County, North Carolina, or in any county contiguous to Robeson County, North Carolina?

John A. Sharpe, Jr., and Helen S. Sharpe—Contingent upon court decision granting the relief sought by plaintiffs in this action, intend to explore feasibility of directly or indirectly owning and/or operating, and/or financing, and/or establishing, and/or controlling, and/or supporting, and/or becoming employed by a newspaper or other printed advertising medium in Robeson County or any county adjacent thereto.

Clifford S. Sharpe—Currently committed to military service. Intends, at expiration of tour of duty, to ascertain opportunities for ownership and management of an independent newspaper, as an alternative to a military career.

Brenda B. Sharpe—Plans to support and assist husband, Clifford S. Sharpe, in newspaper work if he becomes so engaged.

Hal C. Sharpe—Plans to participate in ownership and/or financing and/or operation of a newspaper or other advertising medium in conjunction with parents and/or brother.

. . . .

b. Have you entered into any contract, memorandum of understanding or agreement of any kind regarding such plans?

Verbal agreement only, as to intent to explore and evaluate opportunities at such time and in such circumstances as exist when a determination is made by the court as to restrictions on payments for assets of THE ROBESONIAN, INC.

(1) With whom?

Plaintiffs, among themselves.

. . . .

4. What actions, other than as may already have been described above, have you taken to carry out such plans?

> John A. Sharpe, Jr., and Helen S. Sharpe—To maintain capability to carry out above-stated intent: continued associate membership in North Carolina Press Association and National Newspaper Association; continued subscription to and study of newspaper trade publications; inquiries about newspaper equipment; option to purchase a building for renovation for office use;[6] petition for declaratory judgment (this action).

> Brenda B. Sharpe—Student on-job training in newspaper (out of state).

> Clifford C. Sharpe and Hal C. Sharpe—None. Assent to parents' action.

This evidence supports Judge Ellis's finding that "plaintiffs have presented no evidence of specific plans to directly or indirectly own, operate, finance, establish, control, support or become employed by a newspaper or other printed advertising medium in Robeson County or in any other county adjacent thereto."

Plaintiffs rely upon this Court's statement in *Light Co. v. Iseley*, 203 N.C. 811, 820, 167 S.E. 56, 61 (1933) that "[i]t is not required for purposes of jurisdiction that the plaintiff shall allege or show that his rights have been invaded or violated by the defendants, or that the defendants have incurred liability to him, prior to the commencement of the action." This is an accurate statement of the law and is consistent with the portion of N.C.G.S. § 1-254 which says "[a] contract may be construed either before or after there has been a breach thereof." In order to maintain a declaratory judgment action, the plaintiff does not have to allege or prove that a traditional "cause of action" exists in his favor against the defendant. On the other hand, he must establish that something more than a disagreement as to rights exists between

---

6. Although not important to our decision, we note that the record does not indicate whether this building is within the area of Robeson County or any adjoining county. There is evidence that Jack Sharpe, one of the plaintiffs, purchased newspapers in Nashville and Lillington, both outside the area covered by the questioned provisions in the note.

the parties. In an effort to describe the point along a continuum between disagreement and actual breach of contract the parties must have reached in order for their conflict to have become an "actual or real presently existing controversy," *Consumers Power v. Power Co.*, 285 N.C. 434, 451, 206 S.E. 2d 178, 190 (1974), this Court has said that in order "to satisfy the jurisdictional requirement of an actual controversy, it is necessary that litigation appear unavoidable," *Gaston Bd. of Realtors v. Harrison*, 311 N.C. at 234, 316 S.E. 2d at 61.

That the plaintiffs misapprehend the nature of an actual controversy necessary for jurisdiction under the Declaratory Judgment Act is illustrated by the contention in their brief that "[t]he controversy as to whether the noncompetition clause in the promissory notes was valid as to Plaintiffs arose the instant such clause was inserted in the notes." They further contend that:

> Plaintiffs voted against the sale of the corporation's assets to Defendant; Plaintiffs refused to agree to a noncompete contract with Defendant; Plaintiffs did not assent to the Agreement of Sale negotiated by the officers of the corporation; Plaintiffs did not acquiesce in or sign the noncompete language in the promissory notes; and the notes were delivered to Plaintiffs. No other facts are necessary to show that an actual controversy exists between the parties regarding the validity of the promissory notes as enforced against the Plaintiffs.

We disagree. In the first place, the questioned provision in the notes has not been "enforced against the Plaintiffs," for the plaintiffs have not competed with the defendant in the covered area. Neither is it reasonably certain that the plaintiffs intend to compete with the defendants if the provisions are declared invalid, for the only intentions expressed by the plaintiffs are intentions to "explore the feasibility" or to "ascertain opportunities" for activities which would be covered by the provisions. Whether they will actually engage in competitive activity depends upon many factors other than the provisions in the notes, including the plaintiffs' health and financial ability, availability of personnel, and public demand. There is nothing to make it appear reasonably certain that if the courts agree with the plaintiffs and declare invalid the questioned provisions that the plaintiffs will engage in

the covered activities rather than "put [the opinion] on ice to be used if and when occasion might arise." *Tryon v. Power Co.*, 222 N.C. 200, 204, 22 S.E. 2d 450, 453 (1942).

In *Consumers Power v. Power Co.*, 285 N.C. 434, 206 S.E. 2d 178, Justice (now Chief Justice) Branch quoted with approval the following excerpt from E. Borchard, *Declaratory Judgments* (2d ed. 1941) at page 60:

> ". . . The imminence and *practical certainty* of the act or event in issue, or the *intent*, capacity, and power to perform, create justiciability as clearly as the completed act or event, and is generally easily distinguishable from remote, *contingent*, and uncertain events that may never happen and upon which it would be improper to pass as operative facts."

*Id.* at 451, 206 S.E. 2d at 189. (Emphasis changed.)

Because there is no evidence of a practical certainty that the plaintiffs will compete with the defendant within Robeson County or adjoining counties or that they have the intention of doing so if the provisions in the note are declared invalid, no justiciable controversy existed between the parties at the time this action was filed and the trial judge properly dismissed the action. We therefore reverse the Court of Appeals.

Reversed.