Smith v. Butler Mtn. Estates Property Owners Assoc.

DANIEL R. SMITH AND ALICE SMITH v. BUTLER MOUNTAIN ESTATES PROPERTY OWNERS ASSOCIATION, INC.

No. 260A88

(Filed 9 February 1989)

**1. Deeds § 20.2— restrictive covenant—minimum square footage—finding of violation by trial court**

Although a homeowners association did not reject plaintiffs' proposed house plans on the basis of a minimum square footage restrictive covenant, there was sufficient competent evidence before the trial court to support the trial court's independent finding that plaintiffs' plans called for construction of a house which would violate the restrictive covenant establishing the minimum square footage requirement, and this finding supported the trial court's dismissal of plaintiffs' action seeking declaratory and injunctive relief prohibiting enforcement of the restrictive covenant.

**2. Deeds § 20.7— subdivision restrictive covenants—modification or repeal**

All property owners in a subdivision subject to restrictive covenants may join together and modify or repeal them, but ordinarily the same mutuality is required to vary the restrictions as to create them, and one owner in a restricted subdivision cannot modify the restrictions without the agreement of all the others.

**3. Deeds § 20.6— subdivision restrictive covenants—who may enforce**

The owner of any one lot in a subdivision subject to restrictive covenants running with the land may enforce them against any other lot owner.

**4. Deeds § 20.2— minimum square footage restrictive covenant**

A restrictive covenant establishing the minimum square footage requirement for homes built in a subdivision was valid and enforceable against the plaintiffs.

ON appeal by the plaintiffs pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 90 N.C. App. 40, 367 S.E. 2d 401 (1988), affirming the judgment of *Burroughs, J.*, entered in the Superior Court, BUNCOMBE County, on 18 December 1986, involuntarily dismissing the plaintiffs' action pursuant to N.C.G.S. § 1A-1, Rule 41(b). Heard in the Supreme Court on 14 November 1988.

*Brock & Drye, P.A., by Floyd D. Brock and Michael W. Drye, for the plaintiff appellants.*

*Adams, Hendon, Carson, Crow & Saenger, P.A., by Martin K. Reidinger, for the defendant appellee.*

MITCHELL, Justice.

The plaintiffs, who own a lot in Butler Mountain Estates, instituted this declaratory judgment action seeking to have certain restrictive covenants declared void and unenforceable. As alternative relief, the plaintiffs sought to have the defendant, Butler Mountain Estates Property Owners Association, Inc., enjoined from enforcing the restrictions.

Evidence introduced in the trial court tended to show that Butler Mountain Estates is a residential development consisting of forty-eight lots. At the time this action was commenced, houses had been constructed on twelve of the lots and houses were under construction on three of the other lots. All lots in the subdivision are subject to restrictive covenants set out in the provisions of a recorded restrictive agreement. The restrictive agreement provides, *inter alia*, that any house built in the subdivision must have a habitable floor space on its main level, exclusive of basements, porches and garages, of at least 1,100 square feet.[1] Furthermore, the restrictive agreement provides in provision number nine that all building plans "require the approval of the developer and/or Property Owners Association."[2] The restrictive agreement specifically provides in provision number one that the covenants and restrictions set out in the agreement are to be covenants running with the land and shall be binding on all parties and their heirs, assigns and successors in interest.

Initially, plans for houses proposed for construction in the subdivision were taken by the president of the association to the owners of existing homes in the subdivision and approved or disapproved by those individual homeowners. Subsequently, the defendant association formed an architectural review committee which consisted of the board of directors of the association and the owners of lots in the subdivision on which houses had been

1. Although provision number eight in the restrictive agreement which deals with the square footage requirement is not clearly drafted, we agree with the Court of Appeals that this was the proper construction of the restrictive covenant established by that provision.

2. Prior to any of the acts of the defendant association resulting in the bringing of this action by the plaintiffs, the developer executed a "Grant of Architectural Review" granting the defendant association all of the rights reserved to the developer by this provision.

constructed. Thereafter, the committee reviewed plans for proposed houses and accepted or rejected them.

In October 1985, the plaintiffs submitted a set of plans to the architectural review committee for approval. Those plans, which were not for a geodesic dome house, were rejected solely because they failed to call for the required minimum area of 1,100 square feet on the main level of the proposed house.

The plaintiffs submitted another set of plans for a proposed house to the architectural review committee for approval in December 1985. These plans were for a geodesic dome house and were rejected by the architectural review committee. The president of the defendant association then wrote the plaintiffs a letter indicating that the "proposed structure reflects a marked departure from home-building styles prevailing throughout the area" and that the plaintiffs "might consider a design closer to the home-building styles that exist on Butler Mountain Estates." At trial, the president of the association testified that the plans were not rejected on the basis of the minimum square footage covenant, even though they "could have been rejected for that reason" because the house called for by the plans would be 30 to 50 square feet short of the required 1,100.

The architectural review committee did not have any written standards as to what constituted acceptable building plans. However, an informal "format" was established by which to review plans submitted by property owners, based upon the committee's belief that the homes in the subdivision should "conform and blend together."

After the committee rejected the plaintiffs' second set of plans, the plaintiffs instituted this declaratory judgment action, which was tried without a jury. The trial court, having made findings of fact and conclusions of law, entered its judgment granting the defendant's motion to dismiss pursuant to Rule 41(b) of the North Carolina Rules of Civil Procedure.

The plaintiffs appealed to the Court of Appeals which, with one judge dissenting, affirmed the trial court. The Court of Appeals first concluded that there was sufficient competent evidence to support the trial court's finding of fact that the plaintiffs' second set of plans did not meet the minimum square footage re-

quirements of the restrictive covenants. The Court of Appeals also concluded that the trial court did not err in its conclusion that the defendant association properly rejected the plans on that basis. Next, the Court of Appeals concluded that there was sufficient competent evidence to support the trial court's findings of fact that: (a) the defendant had developed an architectural style as construction took place; (b) the existing housing was of a common, similar or like design; and (c) the plaintiffs' second set of plans was a marked departure from existing homes in the development and did not meet the roofline designs of homes in the area. Finally, the Court of Appeals concluded that the rejection of the plaintiffs' second set of house plans was not arbitrary or capricious, because the record on appeal shows that those plans did not call for a house that would fit into the present and existing general plan or development scheme of the homes in the area.

In his dissenting opinion, Judge Cozort opined that there was no evidence to support a finding that the second set of plans were rejected *by the defendant association* on the basis of insufficient square footage. Furthermore, he did not believe that the evidence would support a conclusion that it was proper for the defendant association to reject the plans because of the geodesic dome design.

[1] On the record before us in this case, we only find it necessary to decide: (1) whether there was sufficient competent evidence to support the *trial court's* finding of fact that the plaintiffs' second proposed house plans violated the minimum square footage requirement of the restrictive covenants and, if so, (2) whether that finding was sufficient to support the trial court's dismissal of the action. We conclude in this regard that the evidence supported the trial court's finding of fact, which in turn supported the trial court's dismissal of the plaintiffs' action.

The plaintiffs argue that there was no competent evidence to support the *trial court's* finding that "said plans did not meet the square footage requirement" or its holding—erroneously denominated a "finding of fact"—that "[t]he rejection of the Plaintiffs' second plans is upheld [*by the trial court*] based upon their failure to meet the square footage requirement of the restrictive covenants; no finding is made as to the facade or geodesic design." Further, the plaintiffs contend that the trial court erred in con-

cluding as a matter of law that "[t]he rejection of the Plaintiffs' second set of plans [*by the defendant*] due to square footage requirements was a valid exercise of authority under the restrictive covenants that were a matter of public record." They argue in support of this contention that there is simply no evidence to support a finding that the plans were rejected by the *defendant association* on the basis of inadequate square footage.

We agree with Judge Cozort and the plaintiffs that the evidence did not support a finding that *the defendant association*— either itself or through the committee—rejected the plaintiffs' second set of plans due to their failure to call for the minimum square footage. However, our agreement in this regard is not determinative of this appeal. Instead, we must decide whether the trial court properly denied the plaintiffs declaratory and injunctive relief because *the trial court* found that their second set of plans called for construction of a house which would violate the restrictive covenant establishing the minimum square footage requirement.

It is clear that one basis, at least, for the *trial court's* conclusion that the plaintiffs were not entitled to injunctive or declaratory relief was that *the trial court* had made an independent finding of fact that: "The plaintiffs' second set of plans did not meet the restrictive covenant square footage requirement." For this reason, and possibly for others,[3] the trial court allowed the defendant's motion, pursuant to N.C.G.S. § 1A-1, Rule 41(b), to dismiss the plaintiffs' action on the ground that they had shown no right to the relief they sought.

---

3. Although both the defendant and the plaintiffs appear to agree that one basis for the trial court's judgment dismissing this action was that the plaintiffs' proposed geodesic dome house would not share a similar design with existing homes and that the defendant had, therefore, reasonably rejected the plaintiffs' second plans, this is by no means clear from the face of the judgment itself. Although the trial court's findings of facts include findings to the effect that the houses in the subdivision are of "a common, similar or like design" and that there are no other geodesic houses in the subdivision, the "finding" of the trial court upholding the defendant's rejection of the plans specifically stated that "no finding is made as to the facade or geodesic design." The trial court's conclusions of law include a conclusion that the restrictive covenants are connected to a general plan of development, but do not include a conclusion specifically relating to the geodesic design of the house called for by the plans.

The defendant argues that the record clearly includes evidence to support the trial court's finding that the second set of plans violated the minimum square footage restrictive covenant. It points out that there was specific testimony by John Teeter, president of the defendant association, that the plans were thirty to fifty feet short of the minimum square footage required.

A trial court's findings of facts supported by substantial competent evidence are conclusive on appeal, even where there is conflict in the evidence. *Morse v. Curtis*, 276 N.C. 371, 378, 172 S.E. 2d 495, 501 (1970). We agree with the defendant that substantial competent evidence was introduced at trial to support the *trial court's* finding of fact that the house called for by the plaintiffs' second set of plans would violate the minimum square footage covenant. Further, we conclude that this finding was sufficient to support the trial court's dismissal of the action.

[2] Restrictive covenants running with the land are subject to discharge by a properly executed release or agreement. 20 Am. Jur. 2d *Covenants, Conditions, Etc.* § 270 (1965). All property owners in a subdivision subject to restrictive covenants may join together and modify or repeal them, but ordinarily the same mutuality is required to vary the restrictions as to create them, and one owner in a restricted subdivision cannot modify the restrictions without the agreement of all[4] the others. *Id.* "The willingness of some lot owners in a tract to waive the restriction is not binding on others who insist on its strict observance." *Id.*

[3] The minimum square footage covenant in question here is not a mere factor to be considered by the defendant association in deciding whether to approve or disapprove a proposed dwelling. The owner of any one lot in a subdivision subject to restrictive covenants running with the land may enforce them against any other lot owner. *Stegall v. Housing Authority*, 278 N.C. 95, 178 S.E. 2d 824 (1971). This is particularly clear where, as in this case, the covenants specifically provide that they are to run with the

---

4. The particular restrictive agreement in question provides, however, that the covenants may be modified or deleted by the owners of two-thirds of the land conveyed in Butler Mountain Estates, if those owners' interests represent two-thirds of the land area of the subdivision.

Smith v. Butler Mtn. Estates Property Owners Assoc.

land and be enforceable by *any lot owner.*[5] *Lamica v. Gerdes,* 270 N.C. 85, 90, 153 S.E. 2d 814, 818 (1967).

In the present case, Teeter's testimony that the plaintiffs' second set of plans were thirty to fifty feet short of the minimum area required by the covenants is substantial competent evidence that the plans did not call for the requisite area. Therefore, substantial competent evidence supports *the trial court's* finding of fact that the home called for in the plaintiffs' second set of plans would violate the restrictive covenant establishing the minimum requirement for square footage. This finding in turn supports the trial court's holding—erroneously denominated a "finding"—that, "[t]he rejection of the Plaintiffs' second plans is upheld [*by the trial court*] based upon their failure to meet the square footage requirement of the restrictive covenants . . . ."

[4] The restrictive covenant in this case establishing the minimum square footage requirement for homes built in the subdivision is valid and enforceable against the plaintiffs. 7 G. Thompson, Commentaries on the Modern Law of Real Property § 3166 (1962 repl.); *see generally Lamica v. Gerdes,* 270 N.C. 85, 153 S.E. 2d 814 (1967) (reasonable covenants imposing building restrictions not regarded as "impolitic" unless contrary to public policy); *Sheets v. Dillon,* 221 N.C. 426, 20 S.E. 2d 344 (1942) (same). Indeed, the plaintiffs do not contend to the contrary. Unless and until this restrictive covenant is properly modified or repealed, each and every lot owner in the subdivision is entitled to the protection provided by its terms. There is no indication of any sort in the record before us that any lot owner has agreed to waive such protection. The trial court having properly determined that the home called for by the plaintiffs' plans would not contain the required minimum square footage, the plaintiffs were not entitled to any relief which would allow them to build a home in violation of this valid and enforceable restrictive covenant. Therefore, the trial court did not err by entering judgment dismissing their action seeking such relief.

5. Provision number two of the restrictive agreement provides that any owner of any real property in the subdivision may "prosecute any proceedings at law or in equity" against any of the parties to the restrictive agreements or their heirs or assigns who violate or attempt to violate the covenants "and either prevent him or them from so doing and/or to recover damages or other dues from such violation including reasonable attorneys fees."

As the defendant was entitled to a dismissal of the plaintiffs' action for the foregoing reasons, neither the trial court nor the Court of Appeals was required to consider or determine whether the remaining restrictive covenants contained in the restrictive agreement are either valid or enforceable.[6] We do not reach or decide any such questions.

For the foregoing reasons, the decision of the Court of Appeals, affirming the trial court's judgment dismissing the plaintiffs' action, is affirmed.

Affirmed.

6. We neither consider nor decide whether, on the facts of this case, an "actual controversy" as to the remaining restrictive covenants existed at the time of the filing of the plaintiffs' complaint which commenced this declaratory judgment action. *See Sharpe v. Park Newspapers of Lumberton,* 317 N.C. 579, 347 S.E. 2d 25 (1986); *Gaston Bd. of Realtors v. Harrison,* 311 N.C. 230, 316 S.E. 2d 59 (1984).