W.C. CALTON, JR. AND MARY H. CALTON, EXECUTORS OF THE ESTATE OF WILBURN CLYDE CALTON, PLAINTIFFS, AND PHILLIP BYRON CALTON, INDIVIDUALLY AND AS A SHARE-HOLDER OF NORTH CAROLINA EQUIPMENT COMPANY, INTERVENOR-PLAINTIFF V. RENNETH JAVAN ("VAN") CALTON, W.C. CALTON, JR., RAYMOND H. KEES, AND HOWARD E. MANNING, TRUSTEES OF THE "STOCK TRUST" CREATED UNDER THE WILL OF W.C. CALTON, MARY C. FERNANDEZ DECASTRO, RENNETH JAVAN CALTON, PHILLIP BYRON CALTON, W.C. CALTON, JR. AND MARY H. CALTON, TRUSTEES OF THE "MARITAL TRUST" CREATED UNDER THE WILL OF W.C. CALTON, AND NORTH CAROLINA EQUIPMENT COMPANY, DEFENDANTS

No. 9410SC595

(Filed 4 April 1995)

**Declaratory Judgment Actions § 7 (NCI4th); Corporations § 187 (NCI4th)— transfer of stock by testator—restrictions—no justiciable controversy**

In a declaratory judgment action to determine the validity of stock transfers to trustees necessitated by testator's will in light of the transfer restrictions set out in the company's charter and on the stock certificates requiring that shares first be offered to the company and the other shareholders, there was no justiciable controversy and the trial court had no jurisdiction to hear the action where plaintiffs neither alleged nor presented any evidence to show that any shareholder exercised his right to purchase the stock, intended to exercise his right, or was even financially able to do so at the time this action was filed. Furthermore, even if there were an actual controversy, plaintiffs waived any right they may have had to object to the stock transfers where they had knowledge of testator's death and the restrictions contained on the stock certificates, no shareholder asked to purchase any of testator's stock upon his death, and plaintiffs waited eighteen months to file this action.

**Am Jur 2d, Declaratory Judgments §§ 25-41; Corporations §§ 683-708.**

Appeal by defendants Renneth Javan Calton, Raymond H. Kees, and Howard E. Manning, trustees of the stock trust, and by defendant North Carolina Equipment Company from judgment signed 11 February 1994 and filed 17 February 1994 by Judge Coy E. Brewer, Jr. in Wake County Superior Court. Heard in the Court of Appeals 24 February 1995.

*Gulley, Kuhn & Taylor, L.L.P., by Jack P. Gulley and David J. Kuhn, for plaintiffs-appellees. William E. West, Jr. for intervenor-plaintiff-appellee.*

*Hunter, Wharton & Stroupe, by John V. Hunter III, for defendants-appellants Renneth Javan Calton, Raymond H. Kees, and Howard E. Manning, Trustees of the Stock Trust.*

*Moore & Van Allen, PLLC, by Joseph W. Eason and A. Bailey Nager, and Law Offices of Raymond Mason Taylor, by Raymond M. Taylor, for defendant-appellant North Carolina Equipment Company.*

LEWIS, Judge.

W.C. Calton, Sr. (hereinafter "Mr. Calton") died testate on 29 July 1990. At his death, he owned 610 shares of Class A voting common stock and 2,779 shares of Class B non-voting common stock in North Carolina Equipment Company (hereinafter "NCEC" or "the company"). His will left the Class A stock to a testamentary "stock trust" and the Class B stock to a testamentary "marital trust." The stock trust was to be administered by Renneth Javan ("Van") Calton, Raymond Kees, Howard Manning, and W.C. Calton, Jr., as trustees, and the marital trust was to be administered by Mr. Calton's wife, Mary H. Calton, and his four children, Van Calton, W.C. Calton, Jr., Phillip Calton, and Mary C. Fernandez DeCastro, as trustees. Additionally, W.C. Calton, Jr. and Mary H. Calton were named as executors of the estate of Mr. Calton.

The executors delivered the stock to the company for transfer to the trustees of the two trusts within two weeks of Mr. Calton's death, as required by the will, and the company prepared new stock certificates in the names of the trustees. Eighteen months later, in February 1992, the executors filed this declaratory judgment action. In June 1993, Phillip Calton was allowed to intervene as intervenor-plaintiff. At issue was the validity of the stock transfers to the trustees, in light of the transfer restrictions set out in the company's charter and on the stock certificates. The restrictions state in pertinent part:

> The stock of this corporation can be sold by the owners thereof only by first making an offer in writing to the Company to sell such stock to the Company or to the remaining stockholders thereof, at the value as shown by the books of the corporation at

the last preceding annual audit. No stockholder may pledge or assign any stock owned by him except with the understanding that the pledge or assignment so made is subject to this provision of the Certificate of Incorporation of North Carolina Equipment Company, limiting the right of any holder of the stock of said corporation to sell or pledge said stock as set out herein.

If any stockholder shall desire to dispose of his stock or any part of it, he shall first offer to sell the stock or part thereof to the Company and then to the remaining stockholders, for a period of thirty days by written notice, at the book value as shown by the books of the Company at the last preceding annual audit. No stock shall be transferred on the books of the Company unless and until the conditions herein are complied with; and a transfer when and if made shall be prima facie compliance. In the event of the death of any stockholder, this stock shall forthwith be subject to this thirty days option to purchase by the Company and remaining stockholders, and if exercised, the legal representatives of the deceased are and shall be bound to deliver the stock upon tender of the book value as shown by the books of the Company at the last preceding annual audit within the thirty days period after the death or within thirty days after the qualification of the executors or administrators as the case may require. If the stockholder is also an employee or officer of the Company, and he shall sever his connections with the Company for any reason whatsoever, then and in that event, his stock shall be subject to a thirty day option of purchase by the Company, or the remaining shareholders. . . . If neither the Company nor the remaining stockholders purchase the stock within the time limited, the Seller shall have the right to dispose of it as he sees fit; but the Buyer shall take subject to these same restrictions, options, rules and regulations.

Plaintiffs allege that the company did not exercise its option to purchase the stock held by the estate and that the company did not offer the other shareholders the right to purchase the stock or any part of it as required by the transfer restrictions. As a result, plaintiffs allege, there is an actual controversy between plaintiffs and defendants

relating to their respective rights and obligations in relating to the construction and validity of the provisions of the Charter of North Carolina Equipment [Company] as to the rights of the remaining

shareholders of North Carolina Equipment Company to purchase all or part of the stock owned by W. C. Calton at the date of his death.

After a hearing, the trial court concluded that the shares owned by Mr. Calton at his death were transferred to the stock trust and the marital trust in violation of the above restrictions, as the shares were not first offered to the company and the other shareholders, and that the transfers were therefore void *ab initio*. From the judgment, the trustees of the stock trust (less W.C. Calton, Jr.) and NCEC appeal. For purposes of this opinion, the executors and the intervenor-plaintiff will be referred to collectively as "plaintiffs," and the trustees of the stock trust and NCEC will be referred to collectively as "defendants."

Although not raised by the parties, we first address the jurisdiction of the trial court to hear this declaratory judgment action. *See Ramsey v. Interstate Insurors, Inc.*, 89 N.C. App. 98, 102, 365 S.E.2d 172, 175 (holding that this Court may address subject matter jurisdiction of trial court in declaratory judgment action even though not argued by parties), *disc. review denied*, 322 N.C. 607, 370 S.E.2d 248 (1988). N.C.G.S. § 1-254 (1983) provides as follows:

> Any person interested under a deed, will, written contract or other writings constituting a contract . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder. A contract may be construed either before or after there has been a breach thereof.

Although the Declaratory Judgment Act does not specifically state that an actual controversy between the parties is a jurisdictional prerequisite to an action thereunder, our case law has imposed such a requirement. *Sharpe v. Park Newspapers of Lumberton, Inc.*, 317 N.C. 579, 583, 347 S.E.2d 25, 29 (1986). Further, the controversy must exist between the parties at the time the pleading requesting declaratory relief is filed. *Id.* at 584, 347 S.E.2d at 29. Our Supreme Court has stated that an actual controversy is more than a mere disagreement between the parties; rather, litigation must appear unavoidable. *Id.* at 589, 347 S.E.2d at 32. A mere difference of opinion between the parties, without any practical bearing on any contemplated action, does not constitute a genuine controversy. *Barbour v. Little*, 37 N.C. App. 686, 691, 247 S.E.2d 252, 255, *disc. review denied*, 295 N.C. 733, 248

S.E.2d 862 (1978). That is, the Declaratory Judgment Act does not authorize the adjudication of abstract or theoretical questions. *Angell v. City of Raleigh*, 267 N.C. 387, 391, 148 S.E.2d 233, 236 (1966).

For example, in *Sharpe*, the plaintiffs were minority shareholders in a corporation that sold its assets to the defendant. In partial payment of the purchase price for the assets, the defendant gave promissory notes to the corporation, which were distributed to the shareholders. The notes conditioned the amount of their payoff on whether the shareholders competed against the defendant over the next several years. The plaintiffs sought a declaratory judgment to determine the validity of the competition provisions in their note. The plaintiffs presented no evidence of specific plans to directly or indirectly compete with the defendant. The Court held that because there was no evidence of a practical certainty that the plaintiffs would compete with the defendant or that they had the intention of doing so if the provisions in the note were declared invalid, no justiciable controversy existed between the parties at the time the action was filed. 317 N.C. at 590, 347 S.E.2d at 32.

Similarly, in the case at hand, we find that there was no justiciable controversy and that the trial court therefore had no jurisdiction to hear the action. Plaintiffs neither alleged nor presented any evidence to show that any shareholder exercised his right to purchase the stock, intended to exercise his right, or was even financially able to do so at the time this action was filed. Without such allegations or evidence, the issue before the trial court was merely an abstract or theoretical question. There was simply a difference of opinion between the parties, with no practical bearing on any contemplated action. The trial court had no authority to address such an issue where plaintiffs could not establish that there was an actual controversy.

Furthermore, even if there were an actual controversy, all parties to this action had notice of Mr. Calton's death, all were aware of the restrictions contained on the stock certificates, no shareholder asked to purchase any of the stock upon Mr. Calton's death, and some eighteen months elapsed before this action was filed. On these facts we would hold that plaintiffs waived any right they may have had to object to the stock transfers.

For the reasons stated, the judgment of the trial court is vacated, and the case is remanded to the trial court for dismissal.

Vacated and remanded.

Judges COZORT and GREENE concur.