IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-914

Filed 18 June 2025

Wake County, No. 23CV024626-910

NORTH CAROLINA DEPARTMENT OF ENVIRONMENTAL QUALITY, DIVISION OF ENERGY, MINERAL, AND LAND RESOURCES, Petitioner,

v.

WAKE STONE CORPORATION, Respondent.

Appeal by third-party petitioners from order entered 19 February 2024 by Judge Gale M. Adams in Wake County Superior Court. Heard in the Court of Appeals 18 March 2025.

*Calhoun, Bhella & Sechrest, LLP, by James L. Conner, II and Shannon M. Arata, for petitioners-appellants The Umstead Coalition, Randal Dunn, and Tamara Dunn.*

*Ward & Smith, P.A., by A. Charles Ellis and Hayley R. Wells, for respondent-appellee Wake Stone Corporation.*

*Attorney General Jeff Jackson, by Assistant Attorney General Carolyn McLain and Assistant Attorney General Kyle Peterson, for petitioner-appellee North Carolina Department of Environmental Quality.*

DILLON, Chief Judge.

Appellants The Umstead Coalition and Randal and Tamara Dunn wish to challenge the issuance of a mining permit to Wake Stone Corporation ("Wake Stone"). To accomplish this, they moved to intervene in a contested case hearing between Wake Stone and the North Carolina Department of Environmental Quality, Division

of Energy, Mineral, and Land Resources (the "Division"). Appellants' motions were denied in the administrative proceeding, and their appeal of that denial was affirmed by the Wake County Superior Court.

Appellants appeal the superior court's order in its entirety, arguing that they should have been allowed to intervene, that the case is not moot, and that the Administrative Law Judge ("ALJ") erred in reversing the Division's denial of the permit. For the reasoning below, we affirm the order of the superior court.

## I. Background

Wake Stone operates Triangle Quarry, a mining operation located adjacent to William B. Umstead State Park and the Raleigh-Durham Airport in Wake County. In April 2020, Wake Stone applied to the Division to modify its mining permit under The Mining Act of 1971, N.C.G.S. § 74-46 *et seq.*, to expand its operations onto a parcel of land called the Odd Fellows Tract.

In February 2022, the Division issued its decision denying Wake Stone's application.

In March 2022, Wake Stone timely petitioned for a contested case hearing before an ALJ pursuant to N.C.G.S. § 150B-23(a) (2023). At this stage, The Umstead Coalition (a nonprofit organization dedicated to preserving Umstead Park) and the Dunns (Coalition members who own a home adjacent to the Odd Fellows Tract) (collectively, "Appellants") filed motions to intervene as parties pursuant to Rule 24 of our Rules of Civil Procedure. The ALJ denied each motion, but did allow The

N.C. Dep't of Envtl. Quality v. Wake Stone Corp.

*Opinion of the Court*

Umstead Coalition to file an *amicus curiae* brief before the hearing.

In August 2023, the ALJ issued his decision, reversing the Division's denial of the permit on four independent grounds. The next month, in September 2023, the Division filed a petition for judicial review of the ALJ's decision but subsequently settled with Wake Stone and withdrew its petition with prejudice in November 2023.

In the meantime, on 11 September 2023, Appellants filed petitions for judicial review contesting both the ALJ's denial of their motions to intervene and the ALJ's reversal of the Division's denial of the permit application. In February 2024, in a forty-six-page order, the trial court determined Appellants' petitions were mooted in their entirety by the settlement of the underlying controversy between Wake Stone and the Division and the issuance of Wake Stone's permit. The trial court further reasoned in its order that, even if Appellants' petitions were not moot, the ALJ did not err either in denying the motions to intervene or in reversing the Division's denial of the permit. Appellants appealed.

## II.    Analysis

On appeal, Appellants argue they should have been allowed to intervene as parties, that their petitions for judicial review were not moot, and that the ALJ's reversal of the Division's denial of Wake Stone's permit application was erroneous. We address each argument in turn.

### A.  Intervention of Right and Permissive Intervention

Rule 24 of our Rules of Civil Procedure governs intervention of parties. N.C.G.S. § 1A-1, Rule 24 (2023). Rule 24(a)(2) provides that an applicant shall be permitted to intervene if he

> claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

*Id.* § 1A-1, Rule 24(a)(2).

Our Supreme Court interprets Rule 24 to require a putative intervenor to "show that (1) it has a direct and immediate interest relating to the property or transaction, (2) denying intervention would result in a practical impairment of the protection of that interest, and (3) there is inadequate representation of that interest by existing parties." *Virmani v. Presbyterian Health*, 350 N.C. 449, 459 (1999). To show a "direct and immediate interest," the putative intervenor must prove "he will either gain or lose by the direct operation and effect of the judgment[.]" *Strickland v. Hughes*, 273 N.C. 481, 485 (1968). "[A]n indirect, inconsequential, or a contingent" interest is not sufficient. *Id.*

Rule 24(b)(2) provides for permissive intervention "[w]hen an applicant's claim or defense and the main action have a question of law or fact in common." N.C.G.S. § 1A-1, Rule 24(b)(2). Permissive intervention is a matter of the court's discretion, considering "whether the intervention will unduly delay or prejudice the adjudication

- 4 -

of the rights of the original parties." *Id.* A discretionary ruling under Rule 24(b)(2) "is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *White v. White*, 312 N.C. 770, 777 (1985).

### 1. *The Dunns*

The Dunns moved to intervene under both Rules 24(a)(2) and 24(b)(2). As to Rule 24(a)(2), the superior court found that the Dunns failed to show a "direct and immediate interest" because the Dunns' basis for challenging the mining permit was not the same as that of the Division. The Division denied Wake Stone's permit application under N.C.G.S. § 74-51(d)(5), which allows denial based on "a significantly adverse effect on the purposes of a publicly owned park, forest or recreation area." As this was the sole basis for the Division's denial, Wake Stone's effect on the purposes of Umstead Park—namely, conservation, recreation, and education—was the only interest at issue in the contested case hearing. The Dunns, however, applied to intervene to challenge the permit application pursuant to N.C.G.S. § 74-51(d)(4), which allows denial based on "a direct and substantial physical hazard to . . . a neighboring dwelling house." Therefore, the ALJ found, and the superior court affirmed, that the Dunns were not entitled to intervene because they did not allege a direct and immediate interest.

We conclude the trial court did not err. While Appellants are correct that intervenors are free to introduce new issues beyond the scope of the original case once

they become a party, *see Leonard E. Warner, Inc. v. Nissan Motor Corporation in U.S.A.*, 66 N.C. App. 73, 79 (1984), this rule does not extend to *putative* intervenors. As the Dunns were not yet parties to the contested case hearing, any interest warranting intervention under Rule 24(a)(2) must have been at issue at the time of their motion to intervene. The Dunns' interest in the case—the potential physical hazard posed to their home—was properly identified as an indirect interest in the dispute between Wake Stone and the Division because it did not relate to the mining operation's effect on Umstead Park. *See Holly Ridge Assocs. v. N.C. Dep't of Env't & Nat. Res.*, 361 N.C. 531, 538 (2007) (finding that a direct interest must be one that relates to the matter at issue in the contested case and not merely an "underlying issue" affected by the ruling).

As to Rule 24(b)(2), the ALJ determined, and the superior court affirmed, the Dunns were not entitled to permissive intervention because there was no common question of law or fact between the contested case and the Dunns' asserted interest. We agree. The denial criteria raised by the Division and the Dunns—adverse effect on the purposes of Umstead Park and physical hazard to the Dunns' house—are distinct legal questions involving substantially different factual inquiries. The Dunns' characterization of the question of law here as "whether the denial of [Wake Stone]'s application was proper pursuant to the provisions of [N.C.G.S. § 74-51]" erroneously conflates the two distinct legal and factual inquiries raised. We conclude that there is no basis for finding that the ALJ reached his decision arbitrarily.

N.C. Dep't of Envtl. Quality v. Wake Stone Corp.

*Opinion of the Court*

## 2. *The Umstead Coalition*

As an initial matter, we agree with the superior court that The Umstead Coalition moved to intervene solely pursuant to Rule 24(b) (permissive intervention). As such, The Umstead Coalition cannot now raise Rule 24(a) as a ground for intervention. *See Plemmer v. Matthewson*, 281 N.C. 722, 725 (1972). Regardless, there was certainly sufficient evidence to find that The Umstead Coalition's interest was adequately represented by the Division. The Umstead Coalition asserts that the Division is "not well-equipped to assess the specific impact of proposed mining operations on the Park and its environs." However, the Division is explicitly tasked by statute to do just that. *See* N.C.G.S. §§ 74-48, -50, -51(d)(5) (2023). And in doing so, the Division consulted the North Carolina Division of Parks and Recreation—the agency that has the primary responsibility of preserving and protecting Umstead Park—extensively. Therefore, the evidence shows that the Division adequately represented the interest of protecting and preserving Umstead Park, so The Umstead Coalition would not be entitled to intervene pursuant to Rule 24(a).

We agree that the ALJ did not abuse his discretion by denying The Umstead Coalition's motion for permissive intervention and instead granting leave to file an *amicus curiae* brief. The ALJ denied The Umstead Coalition's motion for permissive intervention because it would cause the parties undue delay or prejudice. Specifically, the ALJ believed that adding The Umstead Coalition as a party after the scheduling order was issued would require deadlines to be extended, that it would

burden Wake Stone with additional discovery demands, and that it would hinder mediation or settlement negotiations. The superior court determined that each of these concerns was reasonable based on the administrative record. We agree and accordingly conclude that the ALJ's decision to deny intervention was not so arbitrary that it could not have been the result of a reasoned decision. Moreover, we find that the ALJ's decision to allow The Umstead Coalition to submit an *amicus curiae* brief further substantiates that his decision was reasoned, because it allowed The Umstead Coalition to present any arguments or expertise not captured by the Division's case that might have been relevant to the ALJ's final decision without risking undue delay or prejudice to the parties or the proceeding. Therefore, we affirm the superior court's finding that the ALJ did not abuse his discretion in denying The Umstead Coalition's motion to intervene pursuant to Rule 24(b)(2).

## B. Mootness

Assuming *arguendo* that Appellants should have been permitted to intervene as parties to the contested case, we nevertheless agree with the judgment of the superior court that Appellants' claims are moot because the relief sought is no longer available.

Our Supreme Court has stated that our courts "will not hear an appeal when the subject matter of the litigation has been settled between the parties or has ceased to exist." *In re Swindell*, 326 N.C. 473, 474–75 (1990) (quotation omitted). This is so because "the existence of an actual controversy is necessary to the court's subject

matter jurisdiction." *Sharpe v. Park Newspapers of Lumberton, Inc.*, 317 N.C. 579, 585 (1986). "If the issues before a court or administrative body become moot at any time during the course of the proceedings, the usual response should be to dismiss the action." *In re Peoples*, 296 N.C. 109, 148 (1978).

A case or controversy is moot when a "determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *Lange v. Lange*, 357 N.C. 645, 647 (2003) (quotation omitted). Our Court has previously determined that mootness occurs where, during an appeal of a decision denying a permit, the permit in question is voluntarily issued. In *Carolina Marina v. New Hanover County Board of Commissioners*, 207 N.C. App. 250 (2010), the superior court reversed a Board of Commissioner's decision to deny the plaintiff a special use permit. *Id.* at 251. A neighbor of the plaintiff, whom the superior court allowed to intervene in the case, appealed from the superior court's order. *Id.* While that appeal was pending, the Board voluntarily granted the permit to the plaintiff pursuant to the superior court's order. *Id.* at 252. This Court dismissed the intervenor's appeal, concluding that the Board's subsequent decision to grant the permit mooted the issues presented on appeal. *Id.* at 254–55.

Here, Appellants sought to intervene in order to defend the Division's denial of Wake Stone's mining permit. As in *Carolina Marina*, by settling its dispute with Wake Stone and voluntarily issuing the permit, the Division ended the controversy from which Appellants would have appealed had they been parties in the case. In

N.C. Dep't of Envtl. Quality v. Wake Stone Corp.

*Opinion of the Court*

other words, once the Division decided to grant the permit, a decision from this Court finding that the Division's original denial was lawful would have no legal effect—the permit would still be granted. To wit, the settlement mooted the case in its entirety, and Appellants no longer have a live controversy in which to intervene.

As we have determined that the Division's decision to issue Wake Stone's permit has mooted any issues pertaining to the Division's original denial, we decline to address Appellants' remaining arguments.

AFFIRMED.

Judges CARPENTER and GRIFFIN concur.