DANIEL R. SMITH AND ALICE SMITH v. BUTLER MOUNTAIN ESTATES PROPERTY OWNERS ASSOCIATION, INC.

No. 8728SC476

(Filed 3 May 1988)

1. Deeds § 20.4— restrictive covenants—construction of geodesic dome prohibited

In an action for a declaratory judgment and alternatively for injunctive relief to have defendant's restrictive covenants which prevented plaintiffs from constructing a geodesic dome house on their property declared void, there was competent evidence to support the trial court's findings of fact and conclusions of law that plaintiffs failed to meet the 1100 minimum square footage on the main level requirement and that defendant's architectural review committee rejected plaintiffs' plans on that basis.

2. Deeds § 20.4— restrictive covenants—construction of geodesic dome prohibited —sufficiency of findings

In an action for a declaratory judgment and alternatively for injunctive relief to have defendant's restrictive covenants which prevented plaintiffs from constructing a geodesic dome house on their property declared void, evidence was sufficient to support the trial court's findings that defendants had developed an architectural style as construction took place, that the existing housing was of a common, similar, or like design, and that plaintiffs' set of plans was a marked departure from existing homes in the development and did not meet the roofline designs of homes in the area.

3. Deeds § 20.4— restrictive covenants—submission of house plans and prior consent before construction required—validity of covenants

Restrictive covenants requiring submission of house plans and prior consent before construction, even if they vest the approving authority with broad discretionary power, are valid and enforceable so long as the authority to con-

sent is exercised reasonably and in good faith; therefore, rejection of plaintiffs' house plans was not arbitrary or capricious because the record clearly showed that plaintiffs' plans for their geodesic home was not of the same or similar design as homes already constructed in the subdivision; plaintiffs' dome shaped roofline, which was built out of a series of triangles and pentagons, was a radical departure from the other houses' rooflines; and the main level of plaintiffs' proposed house did not contain 1100 square feet of habitable floor space.

Judge COZORT dissenting.

APPEAL by plaintiffs from *Burroughs, Judge.* Order entered 17 December 1986 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 18 November 1987.

This is a civil action for a declaratory judgment and, alternatively, for injunctive relief to have defendant's restrictive covenants which prevented plaintiffs from constructing a geodesic dome house on their property declared void.

*Brock & Drye, P.A., by Michael W. Drye, for plaintiff-appellants.*

*Adams, Hendon, Carson, Crow & Saenger, P.A., by Martin K. Reidinger, for defendant-appellee.*

JOHNSON, Judge.

Plaintiffs are the owners of a lot in Butler Mountain Estates. Butler Mountain Estates is a residential development containing forty-eight lots, and at the time of this action, consisted of twelve lots upon which houses have been constructed and three lots upon which houses are under construction. The lots in Butler Mountain Estates are subject to restrictive covenants set forth in a restrictive agreement. The restrictive covenants provide that the lots are to be used for single family residential houses and specify that any dwelling erected thereon is to have a habitable floor space on the main level of at least 1100 square feet. Furthermore, the restrictive covenants provide that:

all building plans . . . shall require the approval of the developer and/or Property Owners Association. . . . No structure of any kind, the plan, elevations, and specifications which have not received the written approval of the developer and/or Property Owners Association and which does not

comply fully with such approved plans and specifications, shall be erected, constructed, placed or maintained upon any lot . . .

In the beginning, prior to the formation of an architectural review board, proposed plans were submitted to each existing homeowner and approved or disapproved by the individual homeowners based on square footage and on the design.

On 29 February 1984, Elbert S. Brown and Dorothy S. Brown, the developers of Butler Mountain Estates, signed a Grant of Architectural Review, by the terms of which they granted to Butler Mountain Estates Property Owners Association Corporation, all rights of review and approval reserved by the developer under the above quoted restrictive covenant regarding building plans. In January of 1985, an architectural review board was formed to review all proposed building plans for each dwelling unit to be constructed. The architectural review board consists of the Board of Directors and the existing homeowners in Butler Mountain Estates.

In October 1985, plaintiffs submitted a set of plans for a proposed dwelling unit to the architectural review committee for approval. Plaintiffs' plans, which were not for a geodesic dome house, were rejected solely because they failed to meet the restrictive covenant's square footage requirement.

In December 1985, plaintiffs submitted a second set of plans for a proposed dwelling unit, a geodesic dome house, to the architectural review committee for approval. The architectural review committee rejected these plans because of the roofline and the geodesic design of the house. It was also determined that the plans did not meet the minimum square footage requirement, but the architectural review committee did not express that failure as a prime consideration for rejecting plaintiffs' plans. On 23 January 1986, the president of the Property Owners Association mailed plaintiffs a letter indicating that the "proposed structure reflects a marked departure from home-building styles prevailing throughout the area" and that plaintiffs "might consider a design closer to the home-building styles that exist on Butler Mountain Estates."

The primary manner in which this plan was such a radical departure from the existing homes was in its roofline. Plaintiffs' home would have an irregular domed roofline, which is built out of a series of triangles and pentagons, whereas the existing houses have conventional horizontal rooflines.

The architectural review committee did not have written standards as to design acceptability of plans but did establish among themselves a format to review plans submitted by owners. The committee believed that the homes should "conform and blend together." (See Illustrations on page 44.)

On 11 April 1986, plaintiffs filed their complaint seeking a declaratory judgment and alternatively injunctive relief. Defendant filed its answer on 13 June 1986. On 18 September 1986, plaintiffs filed a motion for summary judgment which was denied by order of the court on 5 November 1986. On 17 December 1986, a trial without jury was conducted before Judge Robert M. Burroughs, Sr. On 18 December 1986, after making findings of fact and conclusions of law, an order was filed granting defendant's motion for involuntary dismissal pursuant to Rule 41(b) of the North Carolina Rules of Civil Procedure. Plaintiffs appeal.

Plaintiffs bring forth sixteen assignments of error grouped into three arguments for this Court's review. For the following reasons, we find no error and affirm the order of the trial court.

[1] First, plaintiffs contend that the trial court erred in finding as fact and concluding as a matter of law that plaintiffs' second set of plans did not meet the restrictive covenant square footage requirement and that the plans were rejected on this basis. We disagree.

The court's findings of fact are conclusive on appeal if supported by any competent evidence, and a judgment supported by such findings will be affirmed, notwithstanding the fact that evidence to the contrary may have been offered. *Brooks v. Brooks*, 12 N.C. App. 626, 184 S.E. 2d 417 (1971).

In the case *sub judice*, there was sufficient competent evidence to support the court's findings of fact and conclusions of law. The restriction in question states in part that:

Smith v. Butler Mtn. Estates Property Owners Assoc.

Illustration of existing houses in
Butler Mountain Estates

(CR: EC)    39' WILLETT ST-39-15-102   MAIN FLOOR

Willett 39' diameter dome on a 5' riser wall with full basement.

Loft

Illustration of
Plaintiffs' geodesic house pla

No structure or building shall be erected, altered, placed, or permitted to remain on any property or tract of land conveyed in Butler Mountain Estates other than one detached single family dwelling, permanent in nature, *the habitable floor space of which, exclusive of basements, porches, garages, is less than 1,100 square feet on the main level of said residence.* (Emphasis added.)

Evidence was also admitted in response to questions tendered by plaintiffs, that the habitable living space on the main level of the house proposed by plaintiffs was thirty to fifty feet short of the required square footage. Thus, there was competent evidence to support the court's findings of fact and conclusions of law that plaintiffs failed to meet the 1100 minimum square footage requirement and that the architectural review committee "rejected [the plans] invariably" on that basis.

[2] Next, plaintiffs contend the trial court erred in finding as fact that (a) defendants had developed an architectural style as construction took place; (b) that the existing housing was of a common, similar or like design; and (c) that the plaintiffs' second set of plans was a marked departure from existing homes in the development and did not meet the roofline designs of homes in the area. Again, we disagree.

We have thoroughly examined the record and find that there is sufficient evidence in the record to support the trial court's findings of fact. The photographs of the twelve houses that exist in the development establish that they are of common, similar or like design, though they are not all exactly alike. The plans submitted by the plaintiffs revealed that the roofline of plaintiffs' house was not of the same or similar design of the other houses. The remaining houses had flat roofs, or pitched roofs with flat planes, and plaintiffs' geodesic home roofline was dome shaped. Furthermore, each house as it was built maintained the same or similar design as each house previously built, thereby establishing the architectural style of the community. Therefore, plaintiffs' assignments of error on these findings of fact are overruled.

[3] Finally, plaintiffs contend that the trial court erred in entering its judgment against them for the reason that the evidence showed that the restrictive covenants are void and unenforceable

as applied because (1) they contain no standards by which proposed plans are to be judged; (2) they are not connected to any general plan or scheme of development; (3) they are ambiguous and (4) they were applied in an arbitrary and unreasonable manner and in bad faith. Again, we disagree.

"In North Carolina restrictive covenants are strictly construed against limitations upon the beneficial use of property, but such construction must be reasonable and not applied in such a way as to defeat the plain and obvious purposes of a restriction." *Boiling Spring Lakes v. Coastal Services Corp.*, 27 N.C. App. 191, 195, 218 S.E. 2d 476, 478 (1975). In *Boiling Springs*, a restrictive covenant required building plans to be submitted to and approved by the grantor prior to construction. This Court laid out the following rules governing approval of building plans by a grantor.

> The exercise of the authority to approve the house plans cannot be arbitrary. There must be some standards. Where these standards are not within the restrictive covenant itself, they must be in other covenants stated or designated, or they must be otherwise clearly established in connection with some general plan or scheme of development. (Citations omitted.) . . . [A] restrictive covenant requiring approval of house plans is enforceable only if the exercise of the power in a particular case is reasonable and in good faith. (Citations omitted.)

*Id.* at 195-96, 218 S.E. 2d at 478-79.

In support of this rule, this Court relied upon decisions in other jurisdictions. *See Syrian Antiochian Orthodox Archdiocese v. Palisades Associates*, 110 N.J. Super. 34, 264 A. 2d 257 (1970); *Rhue v. Cheyenne Homes, Inc.*, 168 Colo. 6, 449 P. 2d 361 (1969).

In *Syrian*, the court held that a covenant which prohibited the creation of structures or improvements unless plans and specifications in a grading plan of a plot to be built upon were approved by the grantor, who could refuse to approve any such plans which were not suitable in his opinion, was valid and enforceable, though no objective standards were set forth within the covenant to guide the grantor. The court stated:

> [t]he purpose of such a provision is to afford mutual protection to the property owners living in the development against injury, whether taking the form of diminished property val-

ues or otherwise, that would result from the construction of a residence or other improvement that was unsightly, in singularly bad taste, *discordantly at variance with neighboring homes in architectural appearance*, or otherwise offensive to the proposed or developed standards of the neighborhood.

*Syrian* at 40, 264 A. 2d at 261. (Emphasis added.)

Similarly, in *Rhue*, that court was called upon to consider a covenant which required plans for construction of houses to be submitted to an architectural committee for approval. In *Rhue*, an owner of property in whose chain of title the covenant appeared, wished to move to the site a thirty-year-old Spanish style home with a stucco exterior and a red tile roof. The development in which the house was to be located was 80% improved with modern ranch style ·and split level homes. The grantor refused approval upon the ground that the proposed improvement, if allowed, would diminish the value of other properties in the neighborhood and would be an unsightly variation from the architectural pattern that had been established. In sustaining the disapproval the court observed:

[i]t is no secret that housing today is developed by subdividers who, through the use of restrictive covenants, guarantee to the purchaser that his house will be protected against adjacent construction which will impair its value, and that a general plan of construction will be followed. Modern legal authority recognizes this reality and recognizes also that the approval of plans by an architectural control committee is one method by which guarantees of value and general plan of construction can be accomplished and maintained.

*Rhue* at 8, 449 P. 2d at 362.

In the case *sub judice*, the restrictive covenant at issue requires building plans to be submitted to and approved by the Property Owners Association which in turn formed an architectural review committee to serve the same function. The record establishes that this architectural review committee rejected plaintiffs' second set of plans because (1) the design of the house reflected a marked departure from the home building styles in the area and (2) the plans did not meet the general roofline design of the houses in the area. In addition, plaintiffs' plans did not

meet the square footage requirement but the architectural review committee did not rely solely on this failure as the primary basis for rejection of the plans.

As shown earlier in the opinion, the plans of the main level of a proposed home had to contain 1100 square feet of habitable floor space. Thus, the architectural review committee could have justifiably rejected plaintiffs' second set of plans on this basis alone. Nevertheless, assuming arguendo, that plaintiffs had met the minimum square footage requirement, the record reveals that the twelve houses constructed were conventional type homes of the same or similar design, and had similar flat roof designs. Plaintiffs' second set of plans for their geodesic home was not of the same or similar design, and their dome shaped roofline, which is built out of a series of triangles and pentagons, was a radical departure from the other houses' rooflines.

Despite the architectural review committee's failure to put in writing the specific architectural style of the houses to be erected, all legitimate considerations which an architectural review committee may assess when determining the aesthetic value in approving house plans which fit into a general plan or development scheme of the neighborhood were attempted in the case *sub judice*. Without such consideration, there would have been no reasonable or good faith determination for approval or disapproval of house plans.

The majority view, which this Court has adopted, with respect to covenants requiring submission of plans and prior consent to construction, is that such clauses, even if vesting the approving authority with broad discretionary power, are valid and enforceable so long as the authority to consent is exercised reasonably and in good faith. Therefore, applying the test of reasonableness and good faith to the case *sub judice*, we find that the rejection of plaintiffs' house plans was not arbitrary or capricious because the record clearly shows that plaintiffs' proposed house plans did not fit into the present and existing general plan or development scheme of the homes in the area.

Accordingly, for all the aforementioned reasons, the judgment is

Affirmed.

Judge WELLS concurs.

Judge COZORT dissents.

Judge COZORT dissenting.

The trial court's order in favor of defendant is confusing, at best. The defendant's president testified that the plans were *not* rejected because of the square footage requirement, even though they "could have been rejected for that reason" because the plans "missed it by about 30 to 50 square feet." He further testified that two houses built by the developer in the early stages of the development were also deficient on square footage, but no action was taken. The only reason given to plaintiffs in the letter rejecting their plans is: "The proposed structure reflects a marked departure from home-building styles prevailing throughout the area." This evidence was uncontradicted.

In its findings of fact, the trial court found:

9. The plaintiffs' . . . plans did not meet the restrictive covenant square footage requirement . . . .

10. The plaintiffs' . . . plans did not meet the general roofline design of the houses in the area . . . .

\*　　\*　　\*　　\*

14. The rejection of the Plaintiffs' . . . plans is upheld based upon their failure to meet the square footage requirement of the restrictive covenants; no finding is made as to the facade or geodesic design.

In its conclusions of law the trial court stated:

6. The rejection of the Plaintiffs' . . . plans due to square footage requirements was a valid exercise of authority under the restrictive covenants . . . .

Plaintiffs excepted to the findings of fact and conclusion of law quoted above.

I do not believe we can affirm the trial court's holding for defendant apparently on the issue of square footage. There is simply

no evidence to support a finding that the plans were rejected on that basis. Furthermore, I do not believe the evidence would support a finding or conclusion that it was proper for defendant to reject the plans because of the geodesic dome design. The pictures of the existing houses in the development, which were tendered as exhibits, demonstrate that almost all of the houses are of a contemporary design, including A-frames and designs which feature roofs of varying heights and slopes. I simply do not find any evidentiary support for the conclusion that the plaintiffs' proposed design is a "marked departure from the home building styles" in the area or that the plans "did not meet the general roofline design of the houses in the area," as stated in the majority opinion. I do not believe there was justification for defendant's rejection of plaintiffs' plans on that basis.

I vote to reverse the trial court and to remand the cause for entry of judgment for plaintiffs.