CHRISTOPHER PROPERTIES, INC. v. POSTELL

[106 N.C. App. 180 (1992)]

———————

CHRISTOPHER PROPERTIES, INC. AND LAWSON DEVELOPMENT CO. v. JAMES M. POSTELL, JR. AND WIFE, SUSAN H. POSTELL AND LAURA K. POSTELL

No. 9119SC501

(Filed 5 May 1992)

1. **Deeds § 67 (NCI4th) — restrictive covenants — owners required to submit plans for approval — valid**

The trial court erred by determining as a matter of law that a restrictive covenant provision requiring property owners to submit written construction plans for approval by the Architectural Control Committee was arbitrary and capricious and therefore invalid. Provisions such as the one at issue in the case at bar are valid in North Carolina.

**Am Jur 2d, Covenants, Conditions, and Restrictions § 182.**

**Validity and construction of restrictive covenant controlling architectural style of buildings to be created on property. 47 ALR3d 1232.**

CHRISTOPHER PROPERTIES, INC. v. POSTELL

[106 N.C. App. 180 (1992)]

2. **Deeds § 77 (NCI4th)— restrictive covenants—determination of compliance—genuine issue of material fact**

There was a genuine issue of material fact in an action to enforce residential restrictive covenants, and the trial court erred by granting judgment for defendants, where the complaint alleges that defendants' above ground pool and deck decrease the fair market value of the lots in the subdivision, are unsightly, unattractive ·and not in harmony of external design with already existing structures on lots in the subdivision; plaintiffs submitted three affidavits, including one from a real estate appraiser; and defendants presented a set of draftsman's black and white renderings of the pool and deck.

**Am Jur 2d, Covenants, Conditions, and Restrictions §§ 312-313.**

APPEAL by plaintiffs from order entered 25 March 1991 in CABARRUS County Superior Court by Judge James C. Davis. Heard in the Court of Appeals 17 March 1992.

*James, McElroy & Diehl, P.A., by Lawrence W. Hewitt and Janet P. Welton, for plaintiffs-appellants.*

*Hartsell, Hartsell & Mills, P.A., by Fletcher L. Hartsell, Jr., for defendants-appellees.*

WYNN, Judge.

Christopher Properties, Inc., (CPI) and Lawson Development Co. (Lawson) instituted this action against James M. Postell, Jr., Susan H. Postell, and Laura K. Postell for their violation of recorded restrictive covenants running with land owned by plaintiffs.

CPI is the owner of real property located in Harrisburg, Cabarrus County. CPI and Lawson entered into a joint venture agreement in August of 1987, to develop this property into a single-family residential subdivision known as Stallings Glen, and CPI still owns a number of the lots. Lawson purchased from CPI some of the lots upon which it is constructing or has constructed single-family residences. These residences sell for $140,000 to $180,000.

On 26 September 1988, CPI recorded restrictive covenants in the Cabarrus County Registry. These restrictive covenants between CPI and subsequent owners of the lots form part of a general plan of development of the Stallings Glen subdivision and run with

CHRISTOPHER PROPERTIES, INC. v. POSTELL

[106 N.C. App. 180 (1992)]

the land. Consequently, all grantees of the lots take subject to these restrictions.

Paragraph Two of the covenants requires that, before any construction is carried out on subdivision property, plans and specifications showing the structure's location on the lot and indicating its dimensions and other features of the structure's appearance must be approved in writing by the Architectural Control Committee. The provision sets out several bases for the Committee's evaluation of any proposed construction. The Committee's members are listed as Betty S. Christopher, President of CPI, and Thomas L. Kale, President of Lawson.

CPI sold Lot Six in Stallings Glen to Hobart Smith Construction Co., Inc., which built a house on the property and conveyed it by general warranty deed to defendants. Defendants took title to the property subject to "enforceable easements and restrictions of record," which include the restrictive covenants recorded in September of 1988.

On 18 June 1990, Betty Christopher was informed by Susan Postell that the defendants intended to install an above-ground swimming pool behind their home located in Stallings Glen subdivision. Christopher consulted with Kale, and they agreed that such a pool would not be appropriate in the subdivision and would violate the restrictive covenants because it would not be in harmony with the existing structures. Christopher advised defendants accordingly that evening. Nevertheless, on 19 June 1990, defendants began construction on the pool and adjoining deck. Later that same day, a letter addressed to Christopher and Kale as the Architectural Committee of Stallings Glen was hand-delivered to Christopher. The letter advised them of defendants' plans to install the above-ground pool and bi-level deck. Further, the letter asked for a response to the design of the deck within ten days. The pool was constructed, installed and filled with water by defendants on or about 20 June 1990.

On 21 June 1990, Kale delivered to defendants a letter from him and Christopher, stating that defendants' letter was unaccompanied by construction plans or specifications. The letter demanded that construction of the structure cease as the Architectural Control Committee had not approved the building of this structure on the lot.

CHRISTOPHER PROPERTIES, INC. v. POSTELL

[106 N.C. App. 180 (1992)]

Plaintiffs then filed suit on 28 June 1990, and alleged that defendants had violated the terms of the covenants by constructing the pool and deck without submitting plans to the Architectural Control Committee and by completing the pool even after the Committee had disapproved of the construction proposals. Plaintiffs requested that defendants remove the pool and deck and not attempt further violations. In the alternative, plaintiffs sought damages for injury to the property values of the lots they still owned in the Stallings Glen subdivision caused by the pool and deck.

Plaintiffs moved for a preliminary injunction on 10 July 1990, which was denied. In March of 1991, defendants filed a motion for judgment on the pleadings which was granted. It is from this order that plaintiffs appealed.

I.

Prior to discussing the merits of appellants' assignments of error, we must first determine whether the trial court's order is a grant of a motion for summary judgment or a dismissal. When the trial court considers materials that go beyond the pleadings, the judgment is one for summary judgment. *See Kessing v. National Mortgage Corp.*, 278 N.C. 523, 180 S.E.2d 823 (1971); *Asheville Contracting Co., Inc. v. City of Wilson*, 62 N.C. App. 329, 303 S.E.2d 365 (1983).

In the case at bar, the trial court considered materials outside the pleadings including affidavits by appellants' agents and appellants' expert witness, correspondence between the parties, and a drawing of appellees' proposed deck and pool. We, therefore, will review the trial court's ruling as a grant of a motion for summary judgment rather than a judgment on the pleadings.

II.

[1]   Appellant first assigns error to the trial court's finding that the restrictive covenants' provision requiring property owners to submit written construction plans for approval by the Architectural Control Committee is arbitrary and capricious and, therefore, invalid.

We begin by examining the language of the restrictive covenants. The section governing new structures provides, in relevant part,

> *Architectural Control.* No building or other structure of any kind shall be erected, placed or altered on any lot shown

upon said maps until the construction plans and specifications and a plan showing the location on the lot of such structure or other building has been approved in writing by the architectural control committee (as hereafter defined) as to the quality of workmanship and materials, harmony of external design with existing structures, and location with respect to topography, finished grade elevation and other residences on adjoining or nearby lots. As used in these restrictive covenants, the term architectural control committee shall mean Thomas L. Kale, president of Lawson Development Company, and Betty S. Christopher, president of Christopher Properties, Inc., or their respective successors; either Thomas L. Kale or Betty S. Christopher shall have the right to grant approval by the architectural control committee of the subdivision. Decisions of the architectural control committee shall be final and conclusive and shall be made in the sole discretion and judgment of the committee.

The trial court found that the above provision was "arbitrary and capricious" and "therefore, invalid, void and of no effect whatsoever," as applied to these defendants.

Because restrictive covenants are not favored in the law, ambiguities are to be resolved in favor of the unrestricted use of land. *Hobby & Son v. Family Homes*, 302 N.C. 64, 274 S.E.2d 174 (1981). This rule of strict construction, however, must not be used to defeat the plain and obvious purposes of the restriction and the intentions of the parties. *Long v. Branham*, 271 N.C. 264, 156 S.E.2d 235 (1967).

In *Boiling Spring Lakes v. Coastal Services Corp.*, 27 N.C. App. 191, 218 S.E.2d 476 (1975), this Court, in a case of first impression, considered the validity of a restrictive covenant which provided that "no building or other structure shall be erected or altered on any lot until the building plans shall have been approved in writing by the developer group." *Id.* at 193, 218 S.E.2d at 477. The *Boiling Springs* Court held that the covenant was valid "when applicable to all of the lots in a residential subdivision as part of a uniform plan of development, or when used in connection with some other stated restriction within which approval may operate." *Id.* at 195, 218 S.E.2d at 478.

Additionally, this Court, in *Smith v. Butler Mtn. Estates Property Owners Assoc.*, 90 N.C. App. 40, 367 S.E.2d 401 (1988), *aff'd,*

324 N.C. 80, 375 S.E.2d 905 (1989), stated that such provisions are reasonable, even in the absence of specific approval standards in the covenants:

> The majority view, which this Court has adopted, with respect to covenants requiring submission of plans and prior consent to construction, is that such clauses, even if vesting the approving authority with broad discretionary power, are valid and enforceable so long as the authority to consent is exercised reasonably and in good faith.

*Id.* at 48, 367 S.E.2d at 407. These covenants, noted the *Smith* Court, are upheld because of the important purposes they serve in modern society:

> "It is no secret that housing today is developed by subdividers who, through the use of restrictive covenants, guarantee to the purchaser that his house will be protected against adjacent construction which will impair its value, and that a general plan of construction will be followed. Modern legal authority recognizes this reality and recognizes also that the approval of plans by an architectural control committee is one method by which guarantees of value and general plan of construction can be accomplished and maintained."

*Id.* at 47, 367 S.E.2d at 406 (quoting *Rhue v. Cheyenne Homes, Inc.*, 168 Colo. 6, 8, 449 P.2d 361, 362 (1969)).

In the instant case, we find that the trial judge erred in determining, as a matter of law, that the Architectural Control Committee's approval requirement was void. Provisions, such as the one at issue in the case at bar, are valid in the State of North Carolina as indicated by the decisions in *Boiling Springs* and *Smith. Accord Black Horse Run Property Owners Assoc. v. Kaleel*, 88 N.C. App. 83, 362 S.E.2d 619 (1987), *cert. denied*, 321 N.C. 742, 366 S.E.2d 856 (1988).

### III.

[2] The appellants also assign error to the trial court's determination that, even if the Architectural Control provision is valid on its face, the appellees' pool and deck comply with the restrictive covenants. For the reasons which follow, we find that the record clearly indicates that there exists a genuine issue of material fact, and that the trial court erred in granting judgment for appellees.

As stated above, in determining whether plans for a proposed structure comply with the restrictive covenant, the court must examine the plans for consistency with the general development scheme of the homes in the area. *Smith*, 90 N.C. App. at 48, 367 S.E.2d at 407. We must determine, therefore, whether a genuine issue of material fact exists as to whether the pool and deck are consistent with the scheme of the area.

Appellants' complaint alleges that the pool and deck "decreas[e] the fair market value of the lots in the subdivision . . . are unsightly, unattractive and not in harmony of external design with already existing structures on lots in the subdivision." The covenant specifically provides that the committee has the authority to disapprove of structures that are deficient "as to quality of workmanship and materials [or] harmony of external design with existing structures. . . ." Appellants, to support their allegations, submitted three affidavits; one of these affidavits was from a real estate appraiser who had examined the pool after its construction and who concluded that the pool will decrease the value of the other lots and is not in harmony with the existing structures in the subdivision. Other sections of the restrictive covenants prohibit temporary structures, satellite dishes, trailers, shacks and barns, revealing a plan to restrict the construction of structures other than the main dwelling house in order to maintain higher property values. Evidence presented by appellees, on the other hand, consisted of a set of draftsman's black-and-white renderings of the pool and deck. Based on the foregoing, we conclude that there exists a genuine issue of material fact as to whether the pool and deck comply with the covenants.

The order of the trial court is,

Reversed and remanded.

Judges ARNOLD and LEWIS concur.