**HYDE v. CHESNEY GLEN HOMEOWNERS ASS'N**

[137 N.C. App. 605 (2000)]

D. MICHAEL HYDE AND WIFE, DINA M. HYDE, PLAINTIFFS V. CHESNEY GLEN HOME-
OWNERS ASSOCIATION, INC., DEFENDANT

No. COA99-152

(Filed 2 May 2000)

**1. Trial— pretrial order—admission of evidence not contained in**

The trial court did not abuse its discretion in an action involving an above-ground pool and homeowner's covenants by permitting amendment of the pretrial order to allow into evidence a previously undisclosed document delineating the architectural committee's reasons for not approving plaintiffs' application. The record reflects that it was plaintiffs who offered the exhibit at trial and, by offering no objection at trial, plaintiffs failed to preserve the question for appellate review. Moreover, admission of evidence not delineated in the original pretrial order is in the discretion of the trial court.

**2. Deeds— restrictive covenants—above-ground pool—disapproval not unresonable**

The trial court did not err by concluding that a subdivision architectural committee had not unreasonably withheld approval of plaintiffs' application for an above-ground pool where unchallenged findings reflect that plaintiffs' next-door neighbor recused himself from proceedings, the three remaining committee members independently reviewed plaintiffs' application, and the general consensus was that more information was required and that the plans as submitted failed to conform to the general plan and scheme of the subdivision. A letter from the property management company referring to a policy prohibiting above-ground pools, which failed to garner the required votes of association members, does not bear upon whether approval was unreasonably withheld because the covenants contain no requirement that approval or disapproval be reasonably communicated, only that approval not be unreasonably withheld, and the failed attempt to ban above-ground pools is unrelated to the issue of reasonableness.

**3. Deeds— restrictive covenants—above-ground pool—denial letter**

The trial court did not err in an action arising from the denial of an above-ground pool application by a subdivision architec-

tural committee in its treatment of the rejection letter. Whether the author's inaccurate recitation of the reasons for the denial exceeded her authority is unrelated to whether the architectural committee unreasonably withheld approval. Plaintiffs' contention that their application was deemed approved under the covenants because the letter was void and therefore no specific reasons for the denial were given within the required time period is untenable because the denial itself was specifically communicated to plaintiffs; nothing more was required under the covenants.

**4. Deeds— restrictive covenants—requirements for denial of application—specific to covenants at issue**

A decision that subdivision restrictive covenants required only that approval of an application not be unreasonably withheld, that a denial must be specific, and that no reasons for the denial were required, was based only on the covenants at issue.

Judge HUNTER concurring in part and dissenting in part.

Appeal by plaintiffs from judgment filed 15 September 1998 and orders entered 15 January 1999 by Judge Michael R. Morgan in Wake County District Court. Originally heard in the Court of Appeals 25 October 1999. An opinion was filed by this Court 16 November 1999. Defendant's Petition for Rehearing, filed 20 December 1999, was granted 23 December 1999 and heard without additional briefs or oral argument. The present opinion supersedes the 16 November 1999 opinion.

*Levine & Stewart, by Michael D. Levine, for plaintiffs-appellants.*

*Jordan, Price, Wall, Gray, Jones & Carlton, by Henry W. Jones, Jr., and Hope Derby Carmichael, for defendant-appellee.*

JOHN, Judge.

Plaintiffs D. Michael Hyde and Dina M. Hyde appeal the trial court's 15 September 1998 judgment in favor of defendant Chesney Glen Homeowners Association, as well as the court's 15 January 1999 grant of defendant's motion for attorney's fees and denial of plaintiffs' motions for new trial, *see* N.C.G.S. § 1A-1, Rule 59 (1999) and for relief from judgment, *see* N.C.G.S. § 1A-1, Rule 60 (1999). We affirm the rulings of the trial court.

Plaintiffs are residents of Chesney Glen Subdivision, located in Wake County and governed by a "Declaration of Covenants, Conditions and Restrictions for Chesney Glen" (the covenants) administered by defendant. On 25 April 1998, plaintiffs submitted to defendant's Architectural Control Committee (ACC) hand-drawn plans for an above-ground swimming pool and backyard fence (the application). Plaintiffs thereby sought approval for the project pursuant to that section of the covenants providing:

[n]o building, sign, fence, . . . or other structure or planting shall be constructed, erected or planted until the plans and specifications showing the nature, kind, shape, height, materials, floor plans, color scheme, and located (sic) with respect to topography and finished ground elevation shall have been submitted to and approved in writing by the [ACC]. *The [ACC] shall have the right to refuse to approve any plans and specifications which are not suitable or desirable, in its sole discretion, for aesthetic or any other reasons, provided such approval is not unreasonably withheld.*

(emphasis added). The covenants also state that:

[n]o exposed above-ground tanks except for *approved* recreational swimming pools will be permitted . . . .

(emphasis added).

Plaintiffs' application was denied by the ACC, although the grounds for its action are disputed by the parties. Cindy Hunter (Hunter), an employee of the property management company engaged by defendant, informed plaintiffs of the denial by letter dated 15 May 1995 (the Hunter letter).

Plaintiffs thereupon filed the instant action 5 July 1995 seeking a declaratory judgment regarding interpretation of the covenants and an injunction restraining defendant from "interfering with [plaintiffs'] plans to construct their pool." Following defendant's original answer, plaintiffs proceeded with construction of both the pool and fence. Defendant thereafter filed a supplemental answer and counterclaim requesting the court (1) to order removal of the pool and fence by plaintiffs; (2) to award costs as well as reasonable counsel fees pursuant to the covenants; and, (3) to assess "fines for [plaintiffs'] continuing violation" of the covenants.

The case proceeded to trial 3 June 1996. At the close of plaintiffs' evidence, the trial court granted defendant's motion for directed ver-

HYDE v. CHESNEY GLEN HOMEOWNERS ASS'N

[137 N.C. App. 605 (2000)]

dict. The court further ordered plaintiffs to remove the pool and fence, to pay fines accruing until such removal was effected, and to reimburse defendant's "reasonable attorney fees."

Although plaintiffs failed to file written notice of appeal to this Court, *see* N.C.R. App. p. 3(a), plaintiffs' subsequent petition for writ of certiorari was granted, *see* N.C.R. App. P. 21(a)(1), allowing the appeal to proceed. In an unpublished opinion, *see Hyde v. Chesney Glen Homeowners Assn.*, 126 N.C. App. 437, 486 S.E.2d 491 (1997) [hereinafter *Hyde I*], this Court reversed the judgment of the trial court.

It appears the initial trial court interpreted *Raintree Homeowners Assn. v. Bleimann*, 342 N.C. 159, 463 S.E.2d 72 (1995), as requiring "evidence of arbitrariness or bad faith on the part of the defendant" homeowners association in order to overturn its decision denying plaintiffs' application. Perceiving no such evidence, the court allowed defendant's directed verdict motion.

On appeal, this Court first observed defendant's directed verdict motion was improper in a non-jury trial. However, we treated the motion

> as having been a motion for involuntary dismissal under Rule 41(b) [N.C.G.S. § 1A-1, Rule 41(b) (1999)] in order to pass on the merits of plaintiffs' appeal.

*Hyde I*, 126 N.C. App. 437, 486 S.E.2d 491.

This Court then highlighted a significant factual difference between the covenants at issue in *Raintree* and those herein, *i.e.*, the presence in the latter of a "standard by which the [ACC's] authority is judged." *Id.*

> Thus, where there is no standard within the restrictive covenant itself, as was the case in *Raintree*, courts apply "the general rule that a restrictive covenant requiring approval of house plans is enforceable only if the exercise of the power in a particular case is reasonable and in good faith." [*Boiling Spring Lakes v. Coastal Services Corp.*, 27 N.C. App. 191, 196, 218 S.E.2d 476, 479 (1975).] In this case [*Hyde I*], the standard by which the [ACC's] authority is judged *is* within the restrictive covenant itself, i.e, whether or not the [ACC's] approval of plaintiffs' plans was "unreasonably withheld." . . . Since the covenant in this case provided a standard, the trial court erred by failing to

determine whether or not the [ACC] "unreasonably withheld" its approval.

*Id.* (citation omitted). Accordingly, *Hyde I* reversed the trial court and remanded the case for further proceedings.

On remand, plaintiffs were allowed to supplement their evidence so as to address the issue of unreasonableness and defendants proceeded with presentation of their case. The trial court entered judgment 11 September 1998, concluding as a matter of law that the ACC "did not unreasonably withhold approval of the [p]laintiffs' application for approval of an above-ground pool and fence." Plaintiffs were ordered to remove the pool and fence and to pay fines totaling $6,950.00 for past violations of the covenants plus an additional $100.00 per week for any continuing violations.

On 24 September 1998, plaintiffs moved for new trial, for relief from judgment, and to stay proceedings to enforce the judgment. The latter motion was allowed 14 January 1999, and the remaining motions were denied 15 January 1999. Defendant's motion seeking counsel fees was granted 15 January 1999. Plaintiffs timely appealed both the 11 September 1998 judgment and the 15 January 1999 orders. Although plaintiffs assigned error to the award of counsel fees, this issue is not discussed in their appellate brief and the assignment of error relating thereto is therefore deemed abandoned. *See* N.C.R. App. P. 28(b)(5) ("[a]ssignments of error . . . in support of which no reason or argument is stated . . . will be taken as abandoned").

[1] Plaintiffs first argue the trial court on remand erroneously permitted amendment of "the original pre-trial order to allow . . . a previously undisclosed document" to be entered into evidence. Plaintiffs' contention borders on the frivolous.

At the commencement of trial upon remand following *Hyde I*, the court heard from the parties regarding witnesses and evidence not specified in the original pre-trial order. Defendant sought to add "one additional document," a worksheet prepared by the ACC delineating the committee's reasons for disapproval of plaintiffs' application (the worksheet), and plaintiffs objected generally. The trial court ruled that both plaintiffs and defendant might introduce "additional evidence on [the] issue of reasonableness," noting this Court had directed resolution of that issue in *Hyde I*.

Although plaintiffs now challenge introduction of the worksheet into evidence, the record reflects that it was *plaintiffs* who offered

the exhibit into evidence at trial. By offering no objection at trial, plaintiffs have failed to preserve this question for appellate review. *See* N.C.R. App. R. 10(b) (to preserve question for appellate review, "a party must have presented to the trial court a timely . . . objection"). Moreover, assuming *arguendo* proper preservation of this issue for appellate review, we note that

> admission of evidence not delineated in the [original] pretrial order is within the sound discretion of the trial court.

*Alston v. Monk*, 92 N.C. App. 59, 64, 373 S.E.2d 463, 467 (1988), *disc. review denied*, 324 N.C. 246, 378 S.E.2d 420 (1989). Given the unique procedural posture of the instant case, the trial court cannot be said to have abused its discretion by allowing each of the parties to present additional evidence and witnesses not contemplated in the original pre-trial order.

**[2]** Plaintiffs next contend

> the trial court erred in finding as a conclusion of law that the [ACC] did not unreasonably withhold approval [of plaintiffs' application] as such conclusion is unsupported by the findings of fact.

We do not agree.

> If the trial court's conclusions of law are supported by findings of fact . . . , and the conclusions of law support the order or judgment of the trial court, then the decision from which appeal was taken should be affirmed.

*In re Everette*, 133 N.C. App. 84, 85, 514 S.E.2d 523, 525 (1999).

In the case *sub judice*, the following pertinent findings of fact, unchallenged by plaintiffs and therefore conclusive on appeal, *see Ply-Marts, Inc. v. Phileman*, 40 N.C. App. 767, 768, 253 S.E.2d 494, 495 (1979) ("[w]here exceptions are not taken to the findings of fact, such findings are presumed to be supported by competent evidence and are binding on appeal"), were rendered by the trial court:

> 9. Mr. Scott Gannon was at [the time of plaintiffs' application] a member of [defendant's] Board of Directors and also served as Chairman of the [ACC]. Mr. Gannon was also the [p]laintiffs' next-door neighbor. . . . Mr. Gannon recused himself from consideration of the [p]laintiffs' [application], as he was their next-door neighbor. . . .

10. Between April 25, 1995 and May 15, 1995, the three remaining members of the [ACC] independently reviewed the [p]laintiffs' application . . . .

11. The three members of the [ACC] cited various reasons for the disapproval of the [p]laintiffs' application, including the reasons that a 24-foot pool was too large for the lot size and that the [p]laintiffs had not included enough information with their application for the [ACC] to make a fully-informed decision. Two members of the [ACC] specifically reported that they should see the actual pool plans or a photograph from the pool manufacturer showing the style of the pool. In addition, one member of the [ACC] felt that he needed to see landscaping plans for screening the pool before he could approve it, and another [ACC] member felt that the pool might be too close to the side lot line as it appeared on the [p]laintiffs' application. The [ACC] also reported that they might consider the matter again based upon a proper and complete application.

. . . .

16. Based upon the testimony and documentary evidence presented by the [d]efendant (which was not presented at the first hearing of this case), the [c]ourt finds as a fact that the [ACC] based its decision to disapprove the [p]laintiffs' application on the fact that the above-ground pool and fence requested did not meet the general scheme and plan of development for the Chesney Glen community . . . .

The foregoing findings reflect that plaintiffs' next-door neighbor recused himself from the proceedings and the three remaining ACC members independently reviewed plaintiffs' application. Further, the general consensus among the latter was that more information was required before the application could be acted upon and that the plans as submitted failed to conform to the general plan and scheme of the subdivision. These findings amply support the trial court's conclusion that the ACC "did not unreasonably withhold approval of the [p]laintiffs' application," and the court's ruling therefore must be affirmed. *See Everette*, 133 N.C. App. at 85, 514 S.E.2d at 525.

Notwithstanding, plaintiffs insist certain actions of defendant and Hunter were unreasonable and that denial of plaintiffs' application must accordingly be characterized as unreasonable. Plaintiffs' contention misses the mark.

Plaintiffs reference the Hunter letter, prepared at the direction of Tom Coleman (Coleman), acting chair of the ACC. The Hunter letter stated:

> The [ACC] has reviewed your request submitted April 25, 1995 to install an above ground pool and fence. . . .

> The [ACC] has denied your request based on the following: The [ACC] and the Board of Directors have established architectural guidelines for the subdivision which will be published to all homeowners in the near future. After careful consideration, the Board of Directors made the decision that above ground pools will not be allowed in Chesney Glen. . . .

In its judgment, the trial court found as a fact that:

> 13. [Coleman] did not authorize [Hunter] to tell the [p]laintiffs that their application had been denied because the Association would not allow above-ground pools. . . .

> . . . .

> 15. . . . [Hunter] acted beyond the scope of her authority in citing those reasons for disapproval of the [p]laintiff's application and . . . [Hunter's] letter does not correctly reflect the [ACC's] reasons for disapproval of the [p]laintiff's application.

The court's findings also recited the Board's attempted adoption of a policy prohibiting all above-ground pools which failed to garner the required two-thirds vote of association members needed to effectuate amendment of the covenants.

Plaintiffs seize upon the foregoing findings, maintaining in their brief that:

> It was unreasonable for [Hunter] to send a denial letter to [plaintiffs] which cited as the reason for denial of the application that above ground pools would no longer be allowed . . . .

> . . . .

> It was unreasonable for the Board of Directors to attempt to prohibit above ground pools when such pools are specifically allowed under the covenants . . . .

Plaintiffs' assertions to the contrary notwithstanding, the contents of the Hunter letter under the circumstances *sub judice* do not

bear on whether "approval [was] . . . unreasonably withheld" by the ACC. The covenants contain no requirement that approval or disapproval be "reasonably communicated," but only that approval not be "unreasonably withheld." In this context, we again note this Court's emphasis in *Hyde I* on deference to the specific provisions of the instant restrictive covenants. *See Hyde I*, 126 N.C. App. 437, 486 S.E.2d 491. As noted herein, the covenants accord to the ACC

> the right to refuse to approve any plans and specifications which are not suitable or desirable, *in its sole discretion*, for aesthetic or *any other reasons* . . . .

(emphasis added).

Further, the failed attempt of the Chesney Glen Homeowners Association Board of Directors (the Board) to ban above-ground pools is unrelated to the issue of reasonableness. The Board and the ACC comprise different entities. Indeed, the trial court's finding of fact 17, also uncontested by plaintiffs and therefore conclusive on appeal, *Ply-Marts*, 40 N.C. App. at 768, 253 S.E.2d at 495, stated:

> the [ACC] deliberated and considered the [p]laintiffs' application independent of any action by, and without any influence or interference of, the Board of Directors relative to prohibition of above-ground pools.

Plaintiffs counter that this Court in *Hyde I* commented that the Hunter letter and the Board's attempt to ban above-ground pools comprised evidence "the [ACC] acted at least arbitrarily in denying plaintiffs' request." *Hyde I*, 126 N.C. App. 437, 486 S.E.2d 491. However, in *Hyde I* we reviewed the trial court's grant of defendant's Rule 41(b) motion for involuntary dismissal, *see* G.S. § 1A-1, Rule 41(b), and noted that a trial court "should defer judgment" on such rulings "until the close of all the evidence 'except in the clearest cases,'" *Hyde I*, 126 N.C. App. 437, 486 S.E.2d 491 (quoting Phillips, 1970 Supplement to 1 McIntosh, *North Carolina Practice and Procedure* § 1375). The statement cited by plaintiffs simply identifies evidence which removed the instant case from the "clearest cases" category such that the trial court should have deferred judgment "until the close of all the evidence." *Id.*

Following remand, the trial court received "all the evidence," *id.*, weighed that evidence and determined the credibility thereof, and

thereafter rendered judgment. We note also that the worksheet listing the ACC's reasons for denying plaintiffs' application had not been introduced into evidence at the time of *Hyde I* and was thus not available either to the initial trial court or to this Court on appeal. Given the new evidence presented at the trial upon remand and the trial court's uncontested factual findings, we cannot say the court incorrectly concluded as a matter of law that defendant did not "unreasonably with[hold]" approval of plaintiffs' application. *See Smith v. Butler Mtn. Estates Property Owners Assn.*, 90 N.C. App. 40, 43, 367 S.E.2d 401, 405 (1988) (if judgment is supported by findings of fact, it will be affirmed notwithstanding fact that contrary evidence may have been offered), *aff'd*, 324 N.C. 80, 375 S.E.2d 905 (1989).

[3] Lastly, plaintiffs find fault with the trial court's treatment of the Hunter letter. Plaintiffs first maintain the trial court's finding of fact 15, set out above, was not supported by competent evidence in the record and in any event is actually a conclusion of law on the issue of Hunter's "scope of authority."

The classification of finding of fact 15 has no bearing on the outcome of this case. Whether Hunter's inaccurate recitation of the reasons for denial of plaintiffs' application exceeded her authority is unrelated to whether the *ACC* "unreasonably withheld" approval of the application. Accordingly, any error of the trial court in categorizing finding of fact 15 is harmless. *See Shepard, Inc. v. Kim, Inc.*, 52 N.C. App. 700, 711, 279 S.E.2d 858, 865 (judgment will not be disturbed if one finding is unsupported by the evidence or immaterial to the case as long as other findings supported by competent evidence are sufficient to support the judgment), *disc. review denied*, 304 N.C. 392, 285 S.E.2d 831 (1981). Further, we note the trial court pointedly determined Hunter exceeded her authority *only* by "citing those [incorrect] reasons for disapproval," not in writing the denial letter nor in informing plaintiffs their application had been denied.

Nonetheless, plaintiffs interject, the covenants provide that

[i]n the event the [ACC] shall fail to *specifically approve or disapprove* the plans and specification[s] submitted in final and complete form, within thirty (30) days after written request for final approval or disapproval such plans and specifications shall be deemed approved.

(emphasis added). Therefore, plaintiffs continue,

[i]f [Hunter] exceeded her authority . . . then the denial letter was null and void, and as a result, no specific reasons for the denial were conveyed from the [ACC] to [plaintiffs]

as required under plaintiffs' interpretation of the covenants. In short, plaintiffs assert that no specific *reasons* for denial were given within thirty days of their application and that their application was therefore "deemed approved."

Plaintiffs' argument is untenable. Although the reasons assigned to denial of plaintiffs' application may have been inaccurate, the denial itself was "specifically" communicated to plaintiffs. When courts interpret the language of restrictive covenants such as those at issue herein,

the covenant must be given effect according to the natural meaning of the words. . . .

*Hobby & Son v. Family Homes*, 302 N.C. 64, 71, 274 S.E.2d 174, 179 (1981).

A dictionary is an appropriate place to gather the natural meaning of words.

*Agnoff Family Revocable Trust v. Landfall Assoc.*, 127 N.C. App. 743, 744, 493 S.E.2d 308, 309 (1997), *disc. review denied*, 347 N.C. 572, 498 S.E.2d 375 (1998).

"Specifically" is defined as "with exactness and precision . . . in a definite manner," *Webster's Third New International Dictionary* 2187 (1966), and as "explicitly, particularly, definitely," *Black's Law Dictionary* 1398 (6th ed. 1990). The Hunter letter stated the ACC "has denied your request," thus "explicitly" and "definitely" conveying that plaintiffs' application had been disapproved. Nothing more was required under the covenants, which set the standards by which the ACC's conduct must be judged, *see Hyde I*, 126 N.C. App. 437, 486 S.E.2d 491 (actions of ACC must be judged by standards in the covenants), which provide that the ACC may "refuse to approve" any plan "in its sole discretion" based upon aesthetics "or any other reason[]." Plaintiffs' attempt to read into the covenants a requirement that the ACC provide "specific" reasons for disapproval of an application is therefore unavailing.

**[4]** Prior to concluding, we address the assertion raised by the dissent that the majority decision herein would operate to allow an architectural review committee to give a property owner

any reason it wished, no matter how ridiculous, or no reason at all for denying an application, so long as valid reasons existed that could be presented to a judge in a later court hearing.

We disagree.

First, the instant decision applies only to the covenants at issue in the case *sub judice*. Decisions of architectural control committees governed by covenants containing no standard by which to judge that committee's authority must be reviewed under the standard promulgated in *Boiling Spring Lakes*, 27 N.C. App. at 196, 218 S.E.2d at 479, and we do not speculate as to whether "reasonable communication" might be required thereunder. Thus, both *Raintree*, 342 N.C. 159, 463 S.E.2d 72, and *Smith*, 90 N.C. App. 40, 367 S.E.2d 401, cited by the dissent for the proposition that homeowners must be given valid reasons for denial of construction applications, were governed by a different standard than that at issue herein and are inapposite.

In the instant case, the covenants require only that (1) the ACC may not "unreasonably with[hold]" approval of an application; and, (2) that if an application is denied, such denial must be specific. The covenants contain no requirement that *any* reasons for denial be communicated to the homeowner.

Accordingly, although plaintiffs may have received inaccurate reasons for denial, the denial itself was specifically communicated and the trial court's uncontested findings, *see Ply-Marts*, 40 N.C. App. at 768, 253 S.E.2d at 495, reflect the ACC possessed valid reasons for denial. Therefore, we are not confronted with the dissent's hypothetical circumstance wherein a homeowners' association has attempted to justify its decision *post hoc* at trial. We reiterate that the worksheet prepared by ACC members contemporaneously with denial of the application was introduced into evidence by plaintiffs themselves.

As noted by the dissent, it appears plaintiffs wrote defendants a letter of protest following denial by the ACC, which communication was not responded to in writing. Nonetheless, while the covenants contain no procedure to protest denial of an application, defendant presented the testimony of both Hunter and Coleman that plaintiffs had been invited to a Board meeting to discuss denial of their application, but failed to attend.

In sum, although plaintiffs' vigorous arguments have proved persuasive to the dissent, we decline to second guess the ruling of the

trial court. After a full trial, hearing evidence at length from both sides, the court determined the ACC

> did not unreasonably withhold [its] approval, . . . [and] acted deliberately, reasonably and in good faith in considering and ultimately disapproving the [p]laintiffs' application . . .
>
> . . . [Further,] the [ACC's] disapproval of the [application] was neither arbitrary nor capricious.

As plaintiffs have not challenged the findings of fact upon which the trial court based the foregoing conclusions, *see Ply-Marts*, 40 N.C. App. at 768, 253 S.E.2d at 495, and as those conclusions of law are supported by the court's findings of fact, *see Everette*, 133 N.C. App. at 85, 514 S.E.2d at 525, we affirm the trial court's decision, *id.*

Affirmed.

Chief Judge EAGLES concurs.

Judge HUNTER concurs in part and dissents in part in a separate opinion.

Judge HUNTER concurring in part and dissenting in part.

I respectfully dissent from the majority opinion on the issue of whether the Architectural Control Committee ("ACC") unreasonably withheld approval of plaintiffs' application for construction of an above-ground swimming pool and backyard fence.

The record reveals that on 25 April 1995, plaintiffs submitted hand-drawn plans to the ACC for an above-ground swimming pool and backyard fence. Plaintiffs thereby sought approval for the project pursuant to the Chesney Glen Subdivision Declaration of Covenants, Conditions, and Restrictions ("Covenants"), which provide in pertinent part:

> No building, sign, fence, . . . or other structure or planting shall be constructed, erected or planted until the plans and specifications showing the nature, kind, shape, height, materials, floor plans, color scheme, and located (sic) with respect to topography and finished ground elevation shall have been submitted to and approved in writing by the [ACC]. The [ACC] shall have the right to refuse to approve any plans and specifications which are not suitable or desirable, in its sole discretion for aesthetic or

any other reasons, provided such approval is not *unreasonably withheld.*

(Emphasis added.) The covenants also provide:

No exposed above-ground tanks except for approved recreational swimming pools will be permitted . . . .

This section of the covenants clearly indicates that above-ground pools, similar to the one plaintiffs sought approval for, are allowed in the Chesney Glen Subdivision. This is supported by the sixth finding of fact by the trial court, which provides:

6. During the period in which the builder/developer was in control of the Association, the builder/developer approved an above-ground swimming pool for Mr. Joe Smith, a resident of Chesney Glen and a member of the Association. The builder/developer also approved another above-ground swimming pool and a hot tub for other lot owners within Chesney Glen during the time of the builder/developer's control of the Association.

Therefore, it is obvious that above-ground pools existed in the Chesney Glen Subdivision at the time plaintiffs submitted their application.

After receiving plaintiffs' application, the ACC did not request any additional information from the plaintiffs concerning their application. By letter dated 15 May 1995, plaintiffs were informed by Cindy Hunter ("Hunter"), an employee of the property management company engaged by defendant, that their application had been denied. The record reveals that this letter was written at the direction of Tom Coleman ("Coleman"), acting chair of the ACC, after Coleman and Hunter had a conversation about the denial and decided that the actual reasons for the denial did not need to be conveyed to the plaintiffs. The letter stated in pertinent part:

The [ACC] has reviewed your request submitted April 25, 1995 to install an above ground pool and fence. . . .

The [ACC] has denied your request based on the following: The [ACC] and the Board of Directors have established architectural guidelines for the subdivision which will be published to all homeowners in the near future. After careful consideration, the Board of Directors made the decision that above ground pools will not be allowed in Chesney Glen. . . .

Plaintiffs were given no other reasons for the denial of their application, and the denial letter did not address or comment on any of the characteristics or features of the pool the plaintiffs had proposed to build. On 25 May 1995, plaintiffs wrote a letter of protest in response to the denial letter, asserting that the Board did not have the authority to prohibit all above-ground pools. There is no evidence in the record that plaintiffs received a response to this letter. In fact, the record contains no evidence of any correspondence between plaintiffs and the ACC in regards to what additions or changes plaintiffs could make to their application to make it acceptable to the ACC.

On 3 July 1995, plaintiffs filed an action for a declaratory judgment as to whether their application had been unreasonably denied under the Covenants. During the pendency of this action, plaintiffs proceeded with construction of both the pool and the fence. Plaintiffs did so pursuant to that section of the Covenants which provides:

> In the event the [ACC] shall fail to *specifically approve or disapprove* the plans and specifications submitted in final and complete form, within thirty (30) days after written request for final approval or disapproval such plans and specifications shall be deemed approved.

(Emphasis added.)

On 17 October 1995, at the annual meeting of the Chesney Glen Homeowners' Association, a proposed amendment to the Covenants which would have prohibited all above-ground pools was considered, but failed to receive the required two-thirds approval of the membership. The ACC subsequently published to all Chesney Glen homeowners its "Revised Architectural Control Guidelines," which were to become effective 1 March 1996. These guidelines include a section that sets forth specific design guidelines for above-ground pools, indicating that future above-ground pools would be allowed, completely contradicting the 15 May 1995 denial letter sent to the plaintiffs.

The North Carolina Supreme Court has addressed the rules of construction which are to be applied when interpreting restrictive covenants, and has stated:

> "Covenants and agreements restricting the free use of property are strictly construed against limitations upon such use. . . . Doubt will be resolved in favor of the unrestricted use of property, so that where the language of a restrictive covenant is capa-

ble of two constructions, the one that limits, rather than the one which extends it, should be adopted, and that construction should be embraced which least restricts the free use of the land.["]

*Long v. Branham*, 271 N.C. 264, 268, 156 S.E.2d 235, 239 (1967) (quoting 20 Am. Jur. 2d *Covenants, Conditions and Restrictions* § 187 (1965). The construction against limitations upon the beneficial use of land must be reasonable and cannot defeat the plain and obvious purposes of a restriction. *Boiling Spring Lakes v. Coastal Services Corp.*, 27 N.C. App. 191, 195, 218 S.E.2d 476, 478 (1975). This Court has held that the exercise of authority with respect to covenants requiring the submission of plans and prior consent to construction, even if vesting the approving authority with broad discretionary power, is valid and enforceable so long as the authority to consent is exercised reasonably and in good faith. *Smith v. Butler Mtn. Estates Property Owners Assoc.*, 90 N.C. App. 40, 48, 367 S.E.2d 401, 407 (1988). With regard to the exercise of authority given architectural review committees, the Supreme Court has stated: " '[A] restrictive covenant requiring approval of house plans is enforceable only if the exercise of the power in a particular case is reasonable and in good faith.' " *Raintree Homeowners Assn. v. Bleimann*, 342 N.C. 159, 163, 463 S.E.2d 72, 74 (1995) (quoting *Boiling Spring Lakes*, 27 N.C. App. at 195-96, 218 S.E.2d at 478-79).

In *Raintree*, the defendant homeowners wanted to replace wood siding with vinyl siding. Pursuant to a restrictive covenant, the defendants applied to the Architectural Review Committee ("ARC") for approval of their plans. This restrictive covenant made the ARC the sole arbiter of such plans, with the authority to withhold approval for any reason, similar to the restrictive covenant at issue *sub judice*. Defendants attended an ARC meeting on the evening of 26 March 1990 and presented evidence in support of their application. The ARC denied defendants' application because it found that the use of vinyl siding was not harmonious with the general theme of the subdivision. The ARC informed defendants that their application for approval had been denied by letter dated 6 April 1990. Defendants replied with a letter requesting that the ARC reconsider their application. The ARC did so at its next meeting and unanimously reaffirmed its prior denial. Defendants attended another ARC meeting a month later and again presented evidence in support of their application and suggested a compromise by which their home would be deemed a "test case" for vinyl siding. The ARC once again denied the application. The

Supreme Court found the defendants had failed to produce any evidence that the ARC acted unreasonably or in bad faith—the ARC had considered defendants' application for vinyl siding on three separate occasions, despite the fact that it had previously found the material unacceptable, and the ARC had consistently denied other applications for vinyl siding. *Id.* at 165, 463 S.E.2d at 75.

In *Smith*, the plaintiffs submitted a set of plans for a proposed dwelling to the architectural review committee for approval. Plaintiffs' plans were rejected because they failed to meet the restrictive covenant's square footage requirement. Plaintiffs then submitted a second set of plans which were rejected by the architectural review committee based on the roofline and geodesic design of the house. The plaintiffs were sent a letter from the president of the property owners association indicating that the proposed house reflected a marked departure from the home-building styles in the area and that the plaintiffs might consider a design closer to those in existence. The plaintiffs were given a definite and legitimate reason why their application had been denied, as well as suggestions on what changes were needed for possible reconsideration and approval. Therefore, this Court held that the architectural review committee had acted reasonably in denying plaintiffs' application. *Smith*, 90 N.C. App. at 48, 367 S.E.2d at 407.

In both *Raintree* and *Smith*, the respective architectural review committees involved the landowners in the application process. Once the application was initially denied, the architectural review committees made concrete suggestions to the landowners about what was needed for approval. The committees also clearly communicated to the landowners legitimate reasons why their applications had been denied. None of this occurred in the case *sub judice*. Here, plaintiffs' original application was denied for an invalid reason, the plaintiffs' letter protesting this decision was disregarded, and plaintiffs were given no specific reason why their application had been denied prior to proceeding with construction, aside from the Board's invalid attempt to prohibit all above-ground pools in the subdivision.

The majority opinion claims to find ample support for its conclusion in the following findings of fact by the trial court:

11. The three members of the [ACC] cited various reasons for the disapproval of the Plaintiffs' application, including the reasons that a 24-foot pool was too large for the lot size and that the Plaintiffs had not included enough information with their

application for the [ACC] to make a fully-informed decision. Two members of the [ACC] specifically reported that they should see the actual pool plans or a photograph from the pool manufacturer showing the style of the pool. In addition, one member of the [ACC] felt that he needed to see landscaping plans for screening the pool before he could approve it, and another [ACC] member felt that the pool might be too close to the side lot line as it appeared on the Plaintiffs' application. The [ACC] also reported that they might consider the matter again based upon a proper and complete application.

. . .

16. Based upon the testimony and documentary evidence presented by the Defendant (which was not presented at the first hearing of this case), the Court finds as a fact that the [ACC] based its decision to disapprove the Plaintiffs' application on the fact that the above-ground pool and fence requested did not meet the general scheme and plan of development for the Chesney Glen community . . . .

I believe the majority's ruling would be correct on this issue if it was simply concluding that valid reasons existed for the ACC to deny plaintiffs' application. However, the majority is using these findings to support its conclusion that the ACC did not act unreasonably in withholding approval of plaintiffs' application. In my opinion, the record lacks any showing, and the trial court made no findings of fact, that these legitimate reasons for denial were ever communicated to the plaintiffs prior to the second hearing in front of the trial court on 4 March 1998. The majority states that: "The covenants contain no requirement that approval or disapproval be 'reasonably communicated,' but only that approval not be 'unreasonably withheld.' " Following this line of reasoning, an architectural review committee could give a landowner any reason it wished, no matter how ridiculous, or no reason at all for denying an application, so long as valid reasons existed that could be presented to a judge in a later court hearing. I believe that the majority's construction of "unreasonably withheld" and "specifically approve or disapprove" in the present case is not a strict construction against limitations on the beneficial use of plaintiffs' property as required by *Boiling Spring Lakes*, 27 N.C. App. at 195, 218 S.E.2d at 478. I believe a reasonable construction against limitations on the beneficial use of property is one which requires the ACC to give notice to the applicant of valid reasons why the application was denied. As in *Rainwater* and *Smith*, plaintiffs

should have been given valid reasons for denial so that they could have worked with the ACC to remedy the problems with their application, if possible. Accordingly, I would reverse the judgment of the trial court on this issue.